## CLARK and another vs. PLUMMER.

*Contribution for maintenance of mill power. Statutory and equitable obligations of mill owners.— Bill of exceptions.*

1. Parties who stand in equal right in respect to the use of water power are held in equity to equal burdens in respect to expenditures for the common benefit in maintaining such power.

2. Under our statute (Tay. Stats., ch. 56, § § 43, 44 et seq.), joint owners of mill dams, booms and piers are liable for the expense of necessary repairs, and a summary mode is provided for determining the necessity and expense of such repairs, and the time for commencing and completing them.

3. A dam, booms and piers were maintained under a charter which authorized certain persons named, and their *assigns*, to maintain the same. Defendant took title to a mill operated by the power created by such dam, under a grant from one of the persons named in the charter, and continued to use the dams, booms and piers in running his mill, and their use was necessary for the enjoyment of such mill. *Held*, that he was liable to contribute for necessary repairs to the dam, etc., whether or not he was legally a tenant in common thereof with the other parties using the same.

4. Where the bill of exceptions does not purport to contain all the evidence on which the finding of facts was based, such finding will not be disturbed.

APPEAL from the Circuit Court for *Green Lake* County.

This action was commenced in Marathon county, and the venue changed to the county of Green Lake. The complaint avers that the plaintiffs, *Clark* and *McIndoe*, and the defendant, are the "joint owners" of a valuable water power, situated in and upon the Wisconsin river at Wausau, in Marathon county, together with the dams, piers and booms appurtenant and necessary to the use and enjoyment of the same, and were the owners and in possession of the same during the year 1867; that said parties were, during said year, and still are, the owners in severalty, and in possession and enjoyment, of saw mills situated upon said river at Wausau, and severally used by them, by means of the aforesaid water power, for the manufacture of lumber; that said parties have been for several years last past, and still are, extensively engaged in the manufacturing of lumber at their said mills; that prior to 1867 plaintiffs and defendant were the tenants in common of, and jointly owned and possessed, a large number of piers and booms, and a guard to a dam, situated in said river, above said mills, and appurtenant to said water power, and jointly used and occupied by the parties in connection with their said mills and power; that said dam, piers and booms were absolutely necessary to the use and enjoyment of said mills and water power, and the business of manufacturing lumber. The complaint further avers that during the year 1866 said dam, piers and boom became and were out of repair and partially destroyed, so as to render it absolutely necessary, for the carrying on of the business of manu· facturing lumber at said mills, and for the use and enjoyment of the mills and power, that they should be repaired and re-built. It is further averred that it was the custom of and understanding between the parties, that, in making the necessary repairs to said dam, piers and boom, each should pay his just proportion of the expenses thereof; that, in justice and equity, in making such repairs, *Clark* should bear two-ninths, *McIndoe* three-ninths, and the defendant four-ninths of the expense; and

Clark and another vs. Plummer.

that, by a common understanding between said parties, such expenses had [previously] been borne by them in those proportions.    It is then averred that, the dam, piers and boom being out of repair and destroyed as aforesaid, the plaintiffs, about December 15, 1866, gave due notice thereof to defendant, and requested him to make his joint proportion of such repairs, the plaintiffs being then and there ready and willing, and offering to make their due proportion thereof; that defendant neglected and refused so to do; that thereupon plaintiffs were compelled make, and did make, the necessary repairs [describing them]; that the same were commenced about January 7, 1867, and completed about April 15 of the same year, at an expense to plaintiffs of about $6,048; that since said repairs were made, the parties have been and still are in the common and continued use, enjoyment and possession of said dam, piers and booms; that after the repairs were completed, to wit, on the 15th of April, 1867, plaintiffs demanded of defendant that he should pay his just proportion of the expense of making them, and defendant then promised to pay the same.    It is further averred that of the expense of making said repairs, *Clark* has paid $1,695.59, and *McIndoe*, $4,352.96 ; that defendant has paid no portion thereof; and that, though often requested, he refuses so to do.    Prayer, that an account be taken of the expenses incurred in making said repairs; that the proportion which each of the parties to · the action should pay, be determined ; and that defendant be adjudged to pay, etc.

The defendant, by his answer, "admits being owner in his own right, of saw mills on the Wisconsin river at Wausau; and that the plaintiffs were at the same time in the occupancy of other saw mills on said river at the same place (but whether as owners or otherwise defendant does not know) ; and that the piers and booms mentioned in the complaint were necessary to the use of said several saw mills." He alleges, however, that he is not, and was not in 1867, a joint owner with the plaintiffs, of said piers and booms; that he did not have during that year,

nor at any other time, a legal or equitable title to, or any interest in them; and that his sole right to the use of said piers and booms is by a written license granting him permission to use them in storing and running logs for his said saw mills. The answer then avers that for six years next preceding this action, defendant had been using "said booms and piers and the pier dams and guard lock which, with said booms and piers, form one connected and entire whole for the use of said several mills, and were repaired by the several occupants of said mills;" that the same required repairs more or less every year; that defendant, during a portion of that time, 'up to the year 1867, made large repairs thereon, which were necessary to the proper preservation and use thereof, to the amount of $6,000; that in 1867 defendant had incurred expenses in making repairs upon said booms and biers, dams and guard locks, to the amount of $1,491, for which he makes a counterclaim. And finally the answer denies all the averments of the complaint not specifically admitted, and demands judgment upon said counterclaim.

The court found as facts, 1. That the parties to this action "are each the owner in severalty, and in possession, of saw mills situated upon the Wisconsin river, and were engaged in the manufacture of lumber during 1866 and 1867, as charged in the complaint." 2. That said parties were tenants in common and joint occupants of the dams, piers and booms described in the complaint, and the same were built and maintained for the common use and benefit of said mills, and such building and maintenance was necessary to the beneficial use and enjoyment of said mills. 3. That in the spring of 1866 said dams, piers and booms were out of repair and partially destroyed, rendering it necessary, for the use and enjoyment of said mills and the manufacturing of lumber thereat, that the same should be rebuilt and repaired. 4. That, by the mutual agreement and understanding of the parties, the expense of rebuilding and making such necessary repairs was to be divided between them

so that *Clark* should have two-ninths, *McIndoe* three-ninths, and defendant four-ninths thereof. 5. That such dams, piers and booms, including the Bates Island piers and booms, were, during said years 1866 and 1867, rebuilt and repaired by the parties; that *McIndoe* necessarily expended in the making of such repairs for the common benefit of the parties, $4,292.96; *Clark* $1,635.59; and defendant $2,541.37; making the whole expense so necessarily incurred $8,465.92. 6. That of said expense *McIndoe* incurred and paid $1,223.03 which is properly chargeable to defendant, and $186.61 which is properly chargeable to *Clark*. 7. That prior to making such repairs notice was given by plaintiffs to defendant, and he was requested to join with them in making the same; and that said repairs were completed about April 20, 1867. 8. That since said repairs were made, said parties have been in the common and continued use, enjoyment and possession of such dams, piers and booms. 9. That all accounts prior to 1865 between said parties, on account of repairs to such dams, piers and booms, had been mutually adjusted.

Judgment that *McIndoe* recover of defendant said sum of $1,223.03, with interest thereon from April 20, 1867, besides costs; and that he recover of his coplaintiff, *Clark*, said sum of $186.61, with interest.

The defendant excepted to the second, fourth, sixth, seventh and ninth findings of fact; and appealed from the judgment against himself.

*G. L. Park* and *D. Lloyd Jones*, for appellant, contended that there was no evidence showing title, legal or equitable, in the defendant, to the piers, booms and dam in controversy, but only an occupancy by him in common with the plaintiffs; that by ch. 82, P. & L. Laws of 1854 (which was put in evidence) the right to maintain said dams, booms and piers (the Wisconsin being a navigable river) was granted to one Shuter, one Barnes, and the plaintiff *McIndoe*, their associates, heirs and assignees, and there is no pretense that either the defendant or *Clark* were ever as-

Clark and another vs. Plummer.

sociated in the charter rights conferred by that act, or that any interest in the charter or the property was ever assigned to them ; that defendant had merely a title to the mill occupied by him, with privilege of using the piers, booms and pond, and this did not make him a tenant in common with plaintiffs (1 Washb. R. P., 562) ; that it is only where equality of rights exists, that equality of burdens is equity (4 Johns. Ch., 334 ; 11 N. H., 367) ; and that if contribution could be com‑ pelled from a mere occupant under a license, the law would compel him to build up the estate of another — to repair or create a property in which he has no title. 2. Counsel further argued that even if defendant was a tenant in common with the plaintiffs of the property in question, he was not liable to contribute for repairs made by them ; that the only *statutes* in force in this state upon the subject (Laws of 1865, ch. 525 ; Laws of 1867, ch. 115) are inapplicable, because they provide a special remedy not here pursued, and for other reasons ; that by the *common law*, the right to compel repairs was limited to " houses and mills " (1 Inst., lib. 3, sec. 323, F ; 1 Washb. R. P., 451 ; 4 Kent's Com., 11th ed., 408), and the word "mill," in its legal signification, means a building with machinery for grinding grain, and the rule ought not to be extended ; and that it is not extended by the cases of *Doane v. Badger*, 12 Mass., 65, and *Reed v. Jones*, 8 Wis., 421, because in both those cases the obligation to repair was one of contract.

. *James O. Raymond*, for respondent, cited *Reed v. Jones*, 8 Wis., 392, 421 ; 4 Kent's Com., 367–371 ; 11 N. H., 369 ; 4 Johns. Ch., 336.

. COLE, J. It is objected on the part of the defendant, that there was no evidence in the case which showed title in him, either equitable or legal, to the dams, piers and booms which were repaired, and consequently that there was no ground upon which his liability to make contribution could be predicated. The dam, booms and piers were kept up and maintained under

a charter granted by the legislature, which authorized Shuter, Barnes, *McIndoe*, their associates, heirs and *assigns*, to maintain them.    Chap. 82, P. & L. Laws of 1854.    The mill formerly owned by Barnes, with another mill on the same water power, now belongs to the defendant. He is therefore an assignee, under Barnes, of the rights and privileges granted by this charter.    Moreover it is admitted that the defendant occupies and enjoys in common with the plaintiffs — and has for years — the use of the dams, booms and piers, for his mills and in carrying on his business of manufacturing lumber.    Their possession and use are indispensably necessary for the enjoyment of his property, and he has the benefit of all repairs which are made upon them.    These facts are indisputable. And it is also conceded that for years past these piers, booms and dams have been kept in repair and preserved at the joint expense of the parties to this suit, in certain proportions.    Our statute recognizes the duty of joint owners of mill dams, booms, and piers to unite in the expense of making necessary repairs, and provides a summary mode by means of which the necessity for making them, the expense thereof, and the times in which they shall be commenced and completed, shall be determined.    Chap. 56, R. S., Taylor's ed., secs. 43, 44 et seq. We do not, however, understand that the defendant seriously questions his liability to contribute to a certain extent towards these repairs.    He admits that he is a joint occupant of the dams, piers and booms; that they are essential to the beneficial use and enjoyment of his property; and that they have for years been kept up and maintained at the joint expense of the owners.    It is therefore a question of no practical consequence to inquire whether the parties are, strictly speaking, tenants in common in the dams, booms and piers, or what their precise legal title may be, so long as they are in the joint use and possession of them, and have united in maintaining and repairing them since 1860.    Upon any just and equitable principle, the defendant ought to contribute to-

wards the expense of the repairs while he enjoys the benefit of them. But the real controversy in this case appears to be, as to the basis upon which the expense of making the necessary repairs is to be apportioned. The court below held that by the mutual agreement and understanding of the parties, the expense of making them was to be borne in the following proportions, viz. : the plaintiff *Clark* was to pay two-ninths; the plaintiff *McIndoe* three-ninths; and the defendant four-ninths; and the expense was evidently intended to be adjusted on that basis, though, according to our computation, some slight mistakes were made in the apportionment. But there is no error of which the defendant can complain. It is insisted, on the part of the defendant, that the proper basis for apportioning the expense of repairs was the number of saws supplied with logs by means of the booms and dams. It appears that in 1860 the number of saws manufacturing lumber on this power was seven, and, by the consent and agreement of parties, the repairs were made on a basis of sevenths. In 1863 contributions were made by ninths — the Lyman mill with two saws having been added. And the evidence shows very satisfactorily that this rule of apportionment continued until the repairs in controversy were made. It is said that in 1865 the saws were changed to rotary saws in all the mills, reducing the number of saws to five, of which *Clark* had one, *McIndoe* two; and the defendant, who owns the Lyman mill, has two. But although this change was made in the kind of saws used in the different mills, there does not seem to have been any change in the basis of contribution. This point is placed beyond all controversy by the evidence in the case. Even the defendant himself testifies that " *in* 1865, '6 *and* '7 *the basis had been by ninths*," although he does further say, in substance, that in respect to the repairs made in 1866 under the Casterlin & Lawrence contract, which required him to pay four-ninths, he objected, and insisted that this was more than his just proportion. He claimed that this contract was executed for him by an agent not duly author

ized; yet, by the contract made in 1868, signed by himself, he agrees to pay four-ninths of the repairs. This contract, with the other evidence, shows most conclusively that the rule of contribution was in this proportion after the repairs mentioned in the complaint were made. And we should have no doubt that this was the proper basis for apportioning the expense, even from the evidence contained in the bill of exceptions. But the bill of exceptions, as settled by the circuit judge, does not purport to contain all the evidence upon which his finding was made, and we therefore could not disturb it if we had doubt about the correctness of his finding upon the question of fact.

The arrangement made between the defendant and his tenants, Brown and Fellows, about the payment of a certain portion of the repairs, cannot affect the rights of the plaintiffs to compel contribution from him. As a matter of fact it appears that he was credited for more than $1,000, for repairs made and sawing done by them.

The equities of this case are plain. Chancellor Kent says that the doctrine of contribution, in cases like the one before us, rests on the principle that where parties stand *in æquali jure*, equality of burthen becomes equity. 4 Com., marg. p. 371. The plaintiffs and defendant, in respect to these dams, piers and boom, stand in equal right. And for expenditures made for the common benefit the principles of equity require that each should pay his just proportion. This result is attained, so far as the defendant is concerned, by the judgment of the court below. We think, therefore, it should be affirmed.

*By the Court.* — Judgment affirmed.