## THE WAUSAU BOOM COMPANY VS. PLUMER.

WAUSAU BOOM COMPANY.    (1) *Its authority to contract for storage of logs; statute construed.*    (2) *Evidence of such contract.*

EVIDENCE.    (3, 4) *Possession as proof of title.*

CONTRACTS.    (5) *Right of one in peaceable possession of boom to contract with joint owner thereof, for storage of his logs.*    (6) *Power of corporation to contract with stockholder or officer.*

1. Ch. 45, P. & L. Laws of 1871, incorporated the plaintiff company, empowered it to contract and be contracted with, sue and be sued, purchase, hold and dispose of real and personal property, and exercise all the powers necessary to carry into effect the purposes of the act as therein set forth. Sec. 10 gave it the exclusive right to construct and maintain piers and booms, "for holding, storing, assorting or dividing the logs  *  *  in the Wisconsin river," within a certain district. Sec. 12 declares that "said company shall, for three successive weeks prior to the first day of April in each year, cause to be published in some newspaper" a certain notice to log owners, and that all persons desiring to have logs or timber retained or stored in such booms "shall, on or before the first day of April in each year, file with the secretary of said company a statement in writing,  *  *  setting forth that he desires his logs or timber to be retained or stored in said booms," and specifying the number and quantity, the brands, etc.; "and said company shall be under no obligation to receive, retain or store any logs or timber the owners of which have not complied with the foregoing provisions of this section." Sec. 13 provides that the company "shall demand and receive, and are hereby authorized to collect, upon all logs and timber received, retained or stored in their said booms, such sum as may be determined upon and provided" by the board of directors, not exceeding fifty cents per thousand "for each and every thousand feet of logs or timber so as

aforesaid received or stored," etc. *Held*, that said section 12 was not intended to *limit* the capacity of the company to contract for the storage of logs to such as were brought to it in the manner there described; but, by virtue of the general power conferred upon the company to contract in relation to its business, it could agree for the storage of logs in any way in which a lawful contract may be made.

2. The plaintiff company's boom-master testified that defendant brought to him a board showing the marks of defendant's logs, and delivered it to the witness at the "divide" where the logs were to be taken from the open river and turned into the booms; and that defendant told witness to turn all his logs into the boom. It appearing that the company did not charge or claim more for the storage of defendant's logs than is allowed by sec. 13 of its charter: *Held*, that there was sufficient *prima facie* evidence of a valid contract between the parties for the storage of the logs; and it was error to nonsuit the plaintiff.

3. *Possession* of property, unexplained, or not shown to be held in subordination to the rights of another, is *prima facie* evidence of title in the possessor.

4. Plaintiff being shown in the actual possession and use of certain booms, etc., when it contracted for the storage of defendant's logs, the fact that defendant had been owner, in common with others, of said property at the time plaintiff received its charter (secs. 20–23 of said charter) does not rebut the presumption of ownership arising out of plaintiff's possession.

5. Even if it appeared that plaintiff had *not* acquired defendant's interest in such booms, etc., this would not affect its right to recover upon such contract for storage.

6. A corporation may contract with and sue one of its own stockholders or officers, or one of the corporators named in its charter, in his capacity of an individual or natural person.

APPEAL from the Circuit Court for *Marathon* County.

Action to enforce a lien upon certain logs of the defendant claimed by the plaintiff to have been received and stored by it at defendant's request in its boom near Wausau in the Wisconsin River. The answer of the defendant denied the indebtedness claimed by the plaintiff, and also denied that the company had stored any logs for him in the boom as alleged in the complaint, or that he had ever requested the company to receive or store any therein.

Trial by the court without a jury. The plaintiff, to establish his claim, introduced in evidence its charter of incorporation (ch. 45, Laws of 1871), by the first section of which it is authorized to contract and be contracted with, sue and be sued, purchase, hold and dispose of real and personal property, and exercise all the powers necessary to carry into effect the purposes of the act as therein set forth. Sec. 10 gives it the exclusive right to construct and maintain piers and booms "for the holding, storing, assorting or dividing of logs," etc., in the Wisconsin river, within specified limits. Sec. 12 requires the company, for three successive weeks prior to the first day of April in each year, to' cause to be published in some newspaper a notice to log owners, containing certain specified particulars; and declares that any person desiring to have logs or timber retained or stored in such booms shall, on or before the first day of April in each year, file with the secretary of the company a statement in writing, subscribed by him, setting forth his desire and specifying, as near as may be, the number and quantity, brands, etc., of the logs. It further provides that "said company shall be under no obligation to receive, retain or store any logs or timber the owners of which have not complied with the foregoing provisions of this section." By sec. 13 the company was authorized to demand and collect such sums for receiving, retaining or storing logs, timber, etc., as might be determined upon by the board of directors, not exceeding fifty cents per thousand feet.

Plaintiff's boom-master testified that he had charge of the company's boom, and received logs of the defendant therein in his charge; that one Steltz, who was in the employ of the defendant, gave him a paper with marks thereon, which he stated to be the marks of defendant's logs; and that defendant himself, about the same time, handed the witness a board with the same marks upon it, and directed him to turn all logs so marked into the boom, which he did until ordered by defendant to turn them out.

The secretary of the boom company, being shown the paper previously identified as the one handed by Steltz to the boom-master as defendant's marks, testified that it was handed to him, though not by the defendant, as such marks, and so recorded by him in the company's book.

It also appeared in evidence that the logs so received into the plaintiff's boom, were retained by the company until ordered out by the defendant, when they were, at his request, turned into his own boom leading to his mill. It was further shown that the company was, at this time, in the actual and peace-able possession of the boom, and had the entire control thereof; that by resolution of the board of directors, pursuant to the charter, the charge for retaining and storing logs, etc., was fixed at fifty cents per thousand feet; and that the company had filed its petition for a lien at the proper time, as required by law ; but no proof. was given either of the publication, in April, of the notice required by sec. 11 of the charter, or that the defendant had filed with the company the statement re-quired by the same section.

The company having rested, the defendant moved for a non-suit, upon the ground that the proofs showed the defendant to be a tenant in common with the plaintiff in the booms, citing ch. 45, P. & L. Laws of 1871 (the charter of the company, already in evidence), by which it was provided, among other things, that the company, upon compensation made in the man-ner and upon the basis provided in the act, might take posses-sion of and hold for the purposes for which it was created, any lands adjacent to the river, and all booms and piers within the territory over which its exclusive right extended, and at the time of .the passage of the act jointly used by the defendant and others.

The motion was sustained, and judgment of nonsuit entered against the plaintiff, from which it appealed.

*Silverthorn & Bump* and *E. L. Browne,* for appellant :

This action is one upon contract simply, for work and labor

performed by the plaintiff for the defendant at the latter's request; and the question whether or not the defendant has, under the plaintiff's charter, such an interest in the lands, booms and piers used by the company, as constitutes him a tenant in common with the plaintiff, is immaterial. The defendant may have an action against the plaintiff to recover his proportion of the rental value of the common property, if it be such; but that is an issue not involved in this case. The evidence showed that the defendant, notwithstanding any pretended interest he may have had, entered into a valid contract with the plaintiff company for the performance of the services rendered, and the fact that, in the execution of the contract, it may have made use of common property, does not affect its right to recover. It is sufficient that the company was in the quiet, peaceable and exclusive possession of the property. *Brown v. Wellington*, 106 Mass., 318; 8 Am. R., 320. Again, although plaintiff's charter recognizes an interest as then existing in favor of the defendant, it also provides a plan of adjustment by which the plaintiff might acquire his title; and as there was no evidence of any existing interest in the defendant at the time of the services rendered, the presumption would be — the company being shown in possession — that it had taken the proper measures to acquire defendant's title, and that he had parted with his interest.

*Myron Reed,* for respondent:

1. There was no valid contract between the plaintiff and defendant for the performance of the services for which this action is brought. The charter points out clearly the method, and the only one, by which contracts may be made with the company, viz., the printing of the notice and the filing of the statement required by section 12; and the evidence wholly fails to show a compliance with these requirements. 2. Plaintiff's charter showed the title to the booms, at the time such charter was granted, to be in the defendant and others as tenants in common; and this is confirmed by the decision of this court in

*Clark v. Plummer*, 31 Wis., 442. The plaintiff having established this fact and having introduced no evidence to show that the defendant had ever parted with his interest, it follows that, if the company had acquired the interest of any of the other joint owners, it became thereby a tenant in common with the defendant, and its possession was the possession of the defendant. 1 Washb. R. P., p. 566, and cases there cited. The fact of joint ownership being established or conceded, the defendant has as much right to use and occupy the common property as the plaintiff, and the latter cannot sue him for so doing. 1 Washb. R. P., 570, and cases there cited.

DIXON, C. J. The corporate existence of the plaintiff was admitted. It was alleged in the complaint, and not denied by the answer. The receiving and storage of the logs of the defendant, *at his request*, in the booms possessed and controlled by the plaintiff, was directly and explicitly shown. The witness McCarty, the boom-master of the plaintiff in charge of the booms, testified that the defendant himself brought up the board with the marks of his, defendant's, logs upon it, and delivered it to the witness at the opening of the divide where the logs were to be taken from the open river and turned into the booms. The same witness, speaking of the defendant, also testified: " He told me to turn all of his marks into the boom." There was other testimony, though less pointed and direct, tending also to establish the request. A good *prima facie* case was made in this particular.

The position assumed in this behalf by counsel for the defendant, that no request could be made by the defendant or contract entered into by or with the company for the storage of logs in its booms except in the manner prescribed by section 12 of the charter of the company (P. & L. Laws of 1871, ch. 45, sec. 12), is untenable. The design of that section was to facilitate the business of the company by enabling its officers and agents to ascertain in advance of the log-driving season

what logs and what quantities of them the company are expected to receive and store during the approaching season; and it was obviously not the intention to limit the powers of the company or its capacity to contract for the storage of logs to such only as were brought to it in the manner therein prescribed, or by persons who had expressed their desire in that way to have their logs or timber retained and stored in its booms. Independently of that mode of contracting, and by virtue of the general power and authority conferred upon the company to enter into contracts in relation to its business (sec. 1), it was competent for it to bargain and agree for the storage of logs in any other way in which a lawful contract could be made.

The company having charged or claimed no more for the storage of the logs than by section 13 of the charter it was authorized to demand and receive, we are of opinion that a presumptively valid agreement was shown by the evidence, and that the nonsuit was in this respect wrong.

The other ground of nonsuit urged, and upon which it seems to have been in part, if not wholly, granted by the learned judge of the circuit court, is, that the defendant is or was a tenant in common with the plaintiff, or some other persons, of the booms, piers and fixtures, or some part of them, in which the logs were stored, and that, being such tenant in common, the possession of the plaintiff or of the others was his, defendant's, possession, and hence there could be no recovery against the defendant for the use of his own property. How it was found that such tenancy existed, or what the evidence of it before the court was, we are quite unable to discover. The bill of exceptions fails to show that any evidence of the kind was given, and our attention has been directed only to sections 20 to 23, inclusive, of the act of incorporation above referred to, and to the case of *Clark v. Plummer*, 31 Wis., 442. How it is to be inferred, in the absence of all evidence upon the subject, that the company plaintiff has not acquired the interest of the

defendant in the piers, booms and adjacent lands pursuant to the authority given by the sections of the charter last cited, is not easy for us to perceive, especially in view of the fact, clearly established on the trial below, that the company was in the full and exclusive possession, use and enjoyment of the piers, booms and lands at the time of the storage in question. Possession, unexplained or not shown to be held in subordination to the rights of another, is always looked upon as *prima facie* evidence of title in the possessor. It appears to us that such is the rule which should prevail here, and that upon this point the testimony for the plaintiff also made a good case for recovery against the defendant. But suppose the company has not acquired the interest of the defendant in the piers, booms and lands: what then will be the result? The company might be liable to the defendant for their use to the extent of his property in them, or it might be liable in the trespass or some other form of action for unlawfully taking possession or excluding the defendant; but how would that affect a contract fairly entered into for the storage of the defendant's logs? It is not clearly seen by us that it could have any effect, any more than upon a contract by an individual with a railway company for the carriage of freight, that he should be able to show that the company had crossed his land or was in the possession and use of it wrongfully for its track, or without having agreed for or lawfully acquired the right of way.

Neither can it make any difference that the defendant is one of the associates or corporators named in the charter of the company plaintiff, or that he may be or is a stockholder, director or other officer of the company. The legal entity of the company is not affected by this circumstance, and it may in its distinct corporate capacity sue him in his capacity of an individual or natural person, which is also quite distinct and separate.

In every point of view, therefore, we are of opinion that the judgment of nonsuit was wrong, and that it should be reversed, and the cause remanded for a new trial according to law.

*By the Court.* — It is so ordered.