Crawford and others vs. Witherbee and another.

---

CRAWFORD, Administrator, and others, Respondents, vs. WITHERBEE and another, Appellants.

| 77 | 419 |
| s9 LRA | 561 |
| 29 LRA | 423n |
| 48 LRA | 160n |

*September 6 — September 23, 1890.*

(*1, 2*) *Mines and mining:* Covenant running with land: Construction of drain: Who to repair. (*3, 4*) Evidence: Admission of title: Specific objections: Wills.

1. By a contract under seal C., M. & Co. agreed to excavate or run a " level " to drain certain mineral lands, and, in consideration thereof, W., the owner, agreed to render to them one eighth of all the mineral raised on said lands. It was expressly stipulated that the contract should be binding upon the heirs, executors, administrators, and assigns of both parties, and that the covenant of W. should run with the land; and, to secure to C., M. & Co. one eighth of the mineral raised, an undivided eighth of all the mineral in the lands was

conveyed to them. *Held*, that the covenant of W. ran with the land.

2. The contract was silent as to the depth to which the level should be excavated, and as to who should keep it in repair. In an action by successors in title of C., M. & Co. against devisees of W. to recover the value of one eighth of the ore raised on the lands during a certain time, it appeared that though the level was somewhat out of repair, yet the ore was raised without trouble or increased expense by reason of water. *Held*, that the question whether or to what extent the plaintiffs were bound to keep the level in repair, was not raised.

3. A notice, given by the defendants to the plaintiffs before the action was commenced, to repair the level in compliance with the original agreement, is an admission that the plaintiffs are the successors of C., M. & Co. in the title.

4. An objection to the admission of a will in evidence on the ground that it is immaterial and incompetent for any purpose, is not available to exclude it on the ground that it is not sufficiently authenticated or proved.

APPEAL from the Circuit Court for *La Fayette* County.

Action to obtain an accounting of the amount of lead ore taken since February 1, 1885, from certain lands described in the complaint; to have the value of one eighth part of said ore ascertained and determined; to have it adjudged that the defendants pay said value to the plaintiffs, and that the plaintiffs have a lien on said lands therefor; and for a foreclosure of such lien in case of a default of payment. The facts and the findings of the trial court are sufficiently stated in the opinion. As a conclusion of law the trial court found that the plaintiffs were entitled to judgment for the sum of $670.21, with interest from the commencement of the action, and for costs. From the judgment entered accordingly the defendants appealed.

For the appellants there was a brief by *Orton & Osborn*, and oral argument by *P. A. Orton*. They contended, *inter alia*, that the covenant of Hiram Witherbee to pay one eighth of the ore raised on the lands, as compensation for the construction of the level, does not run with the lands of

the covenantor so as to bind his devisees and assigns, the defendants in this action. (1) No interest in said lands passed to Crawford, Mills & Co. under the contract. There is, therefore, no privity of estate between the assignees of Crawford, Mills & Co. and the defendants, nor is there privity of contract, and therefore there can be no liability. (2) The covenant is not of a character to inhere in any estate which might have been conveyed by the contract so as to impose the charge of its performance upon the reversionary interest in the land which passed to the defendants. *Bronson v. Coffin*, 108 Mass. 175; *S. C.* 118 id. 156; *Walsh v. Barton*, 24 Ohio St. 28; *Kittle River R. Co. v. Eastern R. Co.* 41 Minn. 461; *Gibson v. Holden*, 115 Ill. 199; *Masury v. Southworth*, 9 Ohio St. 340; *Glenn v. Conby*, 24 Md. 127; *Brewer v. Marshall*, 18 N. J. Eq. 337; *Cole v. Hughes*, 54 N. Y. 444; *Scott v. McMillan*, 76 id. 141; *Hart v. Lyon*, 90 id. 663; *Huling v. Chester*, 19 Mo. App. 607; *Bloch v. Isham*, 28 Ind. 37; *Harsha v. Reid*, 45 N. Y. 415; *West Va. Transp. Co. v. Ohio R. P. L. Co.* 22 W. Va. 600; *Wiggins F. Co. v. O. & M. R. Co.* 94 Ill. 83; *Newburg P. Co. v. Weare*, 44 Ohio St. 604; *Keppell v. Bailey*, 2 Mylne & K. 517; *Ackroyd v. Smith*, 10 C. B. 164; *Lynn v. Mt. Savage Iron Co.* 34 Md. 603; *Blount v. Harvey*, 6 Jones Law, 186; *Miller v. Noonan*, 83 Mo. 343; *Wheeler v. Schad*, 7 Neb. 204. The contract, if binding upon these defendants at all, is only binding in case the level is kept in repair by Crawford, Mills & Co. or those claiming under them.

*W. E. Carter*, for the respondents, cited, besides cases cited in the opinion, *Savage v. Mason*, 3 Cush. 500; *Morse r. Aldrich*, 19 Pick. 449; *Hurd v. Curtis*, id. 459; *Vernon r. Smith*, 5 Barn. & Ald. 1; *Keppell v. Bailey*, 2 Mylne & K. 517; *Bedford v. British Museum*, id. 562; Platt, Covenants, 460; 1 Smith's L. C. 116 *et seq.*; *Maine v. Cumston*, 98 Mass. 317; *Standish v. Lawrence*, 111 id. 113; *Richard-*

*son v. Tobey,* 121 id. 457; *Hart v. Kucher,* 5 Serg. & R. 1; *Todd v. Stokes,* 10 Pa. St. 155; *Gilbert v. Drew,* id. 219; *Ingles v. Bringhurst,* 1 Dall. 341; *Burlock v. Peck,* 2 Duer, 90; *Hodge v. Sloan,* 107 N. Y. 244; Rawle, Covenants for Title, 342; 4 Am. & Eng. Ency. of Law, 497; *Sterling Hydraulic Co. v. Williams,* 66 Ill. 393; 1 Smith's L. C. (Hare & W.'s notes), part I, p. 179; *Kentucky C. R. Co. v. Kenney,* 82 Ky. 154; *Goudy v. Goudy,* Wright (O.), 410; *Sandwith v. De Silver,* 1 Browne (Pa.), 221; *Coffin v. Talman,* 8 N. Y. 465; *Post v. Weil,* 115 id. 361; *Nye v. Hoyle,* 120 id. 195.

Orton, J. The facts of this case are briefly and substantially as follows:

About the 10th day of September, 1862, Jefferson Crawford (now deceased), John L. Crawford, Gabriel Mills (deceased), and Henry Magor, as parties of the first part, entered into a contract in writing and under seal with one Hiram Witherbee (now deceased), who was the owner of the lands therein described, and situated in La Fayette county in this state, by which the said party of the first part agreed to excavate or run what is usually called a "level," commencing at the bottom of the tail race of "Crawford's Big Wheel," in a northerly direction up what is known as "Hard Scrabble Branch," or in such direction as they may deem best calculated to drain the said lands of said Witherbee, to be excavated as nearly level in its course as the purpose for which it is intended will permit, and to be commenced within a reasonable time after that date, and prosecuted with reasonable facility. The level was to be run a considerable part of the way through the lands of said Witherbee, described in the agreement, which were supposed to be mineral lands and to contain lead, and which could not be mined, on account of water, without being drained by said level, and which lay south of the north end

of said level, and east and west of it.   In consideration of the excavation of said level, the said Witherbee agreed to render to the party of the first part one clear eighth part of all lead mineral or lead ore raised upon said lands which lie east and west of any excavated portion of said level, and south of an east and west line across the extreme northerly end of the same, as fast as said level shall be prosecuted, free from all expense of discovering or separating it from the earth, and to be paid in kind on the land where raised. It is expressly stipulated in said agreement that it shall bind the heirs, executors, administrators, and assigns of both parties, and that the said covenant of said Witherbee shall run with said lands.   In the said agreement, and for the purpose of securing to the party of the first part one eighth of all mineral raised on said lands, the said Witherbee thereby grants, bargains, and sells to the party of the first part, and to their heirs and assigns forever, one undivided eighth part of all lead mineral in any and all of said lands, to have and to hold the same, together with all and singular the right accruing under the agreement, to the said party of the first part and to their heirs and assigns forever.

It was found by the court that Crawford, Mills & Co. (said party of the first part), within a reasonable time after the execution of said agreement, began said level, and that it was excavated and run by them with reasonable energy and diligence to a point where an east and west line drawn across its northern extremity will pass northward of the places where the ores in controversy were mined, and that the same was so excavated and built many years before the said ores were mined; that the title of said Hiram Witherbee (now deceased) to said lands has become vested in the defendants by and through his devise thereof in his last will and testament, and that they are now in possession of them, and claim title thereto by virtue of said will and conveyances thereunder, and that the plaintiffs are the successors

in title of the said Crawford, Mills & Co., and the owners of all the interest in and to said lands of said Hiram Witherbee conveyed by him in and by said agreement, and are also the owners of said level; that from the date of said agreement to February 1, 1885, the said Hiram Witherbee in his life-time. and the defendants since his decease, paid to said Crawford, Mills & Co., or to said plaintiffs, all rents which accrued to them under and by virtue of said agreement, but since that time the defendants have paid none of the same; that since that time the defendants have received and retained, as the proceeds of the sale by them of one eighth of the ores raised and mined on said lands lying south of an east and west line drawn across the northern end of said level, the sum of $670.21, no part of which has been paid to or received by the plaintiffs; that all of said ores were mined and raised from said lands without hindrance, impediment, increase of cost, or trouble by reason of water therein, and most, if not all of them, were so mined and raised from below the water-level therein before the construction of said level, and above the present water-level in said lands.

The court further found that the level was somewhat out of repair, but that there is a continuous underflow through each of its shafts, and that at least two thirds as much water pours out of the mouth of said level as it ever discharged since its construction, and that the said Hiram Witherbee in his life-time, as late as August 2, 1866, by a certain supplemental agreement, approved and applauded the manner in which said level had been built, down to that time, and the energy with which the work of constructing it had been pushed. These findings appear to have been justified and supported by the evidence.

1. The learned counsel of the appellants contend that the defendants are discharged from the obligation to render such one-eighth of the mineral to the plaintiffs, because the

level or drain was so badly out of repair when it was raised or mined. It does not appear that the defendants were at all injured or prejudiced by any want of repair of the level, if there was any, or that they were at all troubled by water in their mines. The agreement for the construction of the level is silent as to the depth it should be excavated. It only requires the level to be so constructed as to drain or uncover the lead ore so as to permit it to be raised or mined without any trouble or inconvenience from water. Filled up to some extent, as it may be, the level seems to be yet deep enough for all practical purposes, and the defendants have no cause of complaint. It follows, therefore, that the question as to whether the plaintiffs are bound to keep the level in repair, or to what extent they are so bound, is not raised.

2. The point made that the will of Jefferson Crawford was not sufficiently authenticated or proved to be admitted in evidence can hardly prevail,— (1) Because the objection was not specific, that it was not properly authenticated. The objection was that the will was immaterial and incompetent for any purpose. (2) Because the defendants introduced in evidence a notice signed by one of them, dated December 8, 1884, by which the plaintiffs were notified to repair said level in compliance with said original agreement, and that they should withhold the rents until it should be restored to its original usefulness. This notice is an admission that the plaintiffs are the proper parties as successors of Crawford, Mills &. Co. in the title, and bound by the agreement. This cured any error that might have been committed in improperly receiving the will in evidence.

The main and important question in the case is whether the covenant sued upon " runs with the land." On that question, the learned counsel on both sides have submitted unusually able arguments and briefs. We may not follow the learned counsel through their able reasoning and well-

selected authorities, but it will not be from any want of appreciation for their professional labor. It appears to us that the covenant to render one eighth of the mineral to the covenantees, read in connection with the dependent covenant to construct the level for the purpose of making the lead ore in the land available, and the grant of one eighth of such ore in the land, comes within every essential element of one that runs with the land and binds the present parties. (1) There is an estate granted. (2) The performance or non-performance of the covenant affects the nature or value of the property conveyed. (3) There is a privity of estate between the contracting parties. Platt, Cov. 461. One eighth of the mineral is granted or conveyed. While the mineral is in the earth, undiscovered and unmined, it has but little or no value. The covenant requiring the grantor to raise or mine and deliver it to the grantees, gives it value. There is not only privity of estate, but the parties are tenants in common of all the mineral in the land. The covenantees own one undivided eighth of it, and the covenantor reserved and owns seven eighths of it, and covenants to raise, separate, and deliver the one eighth. The possession of the undivided mineral in the land, by the covenant, remains in the covenantor until it is raised, divided, and delivered. The grant without the covenant would make each party liable to contribute a proportionate share of the labor and expense of raising or mining it. *Clark v. Plummer,* 31 Wis. 442. The covenant imposes this burthen wholly upon the grantor or the owner of the seven-eighths share. In that it also affects the quality and nature of the estate granted. The grant of the one eighth of the mineral in the land is a grant of an interest in the land and a part of the realty. *Golden v. Glock,* 57 Wis. 118; *Daniels v. Bailey,* 43 Wis. 566; *Young v. Lego,* 36 Wis. 394. Besides this, the grant with the covenant creates a charge upon the land to secure the mining and delivery of the one eighth, in the nature of a mortgage.

If the grant and covenant together do not sufficiently show the real nature of the covenant, the dependent covenant of Crawford, Mills & Co. to construct the level or drain through and above the lands containing the mineral, for the sole purpose of making it possible to mine the lead ore in it, as the consideration of the covenant to raise and deliver the one eighth of it, will very clearly and conclusively show the latter covenant to be one that runs with the land. By that covenant, they are to construct, at vast expense, such a level as will remove the water from the lead deposits so that they may be mined with facility, and thereby give to the mineral in the land almost, if not quite, its entire value, and make it possible to deliver the one eighth, and to secure the seven eighths of it to the covenantor. Both parties are interested proportionably in and dependent upon that great and common improvement for the value of their respective shares of the mineral. It is the common source of their beneficial interest in the land. As long as the level drains the mineral deposits, each party may make available his interest in the land; and when it fails to so drain the lands, both parties will lose that interest. Suppose that agreement had provided that each party should bear their proportion of the expense of constructing the level and keeping it in repair, so that their respective shares of mineral could be raised, would not such a covenant run with the estate granted to Crawford, Mills & Co.? If so, then it follows that the covenant of Hiram Witherbee, to raise and deliver to them one eighth of the mineral granted, is such a covenant, for they would be mutual and dependent covenants in such a case, and if one runs with the land the other would also.

In *Wooliscroft v. Norton*, 15 Wis. 198, the owner of the dam and water-power deeded to another certain square inches of water to be furnished from the dam, and the grantee covenanted to pay his ratable share of the expenses

of keeping in repair the dam and race-way in proportion to the number of square inches of water by him owned. It was held that such covenant ran with the estate granted and was binding upon subsequent owners. How much more the covenant under consideration. It is not only incident to the property conveyed and affects its value, but it lies directly on the estate granted, is inseparable from it, as its subject, and rests upon the same consideration. It is precisely the same as it would be if it was a covenant in the deed granting the one eighth, imposing upon the grantor the duty or burthen to raise and deliver the mineral granted. That case certainly rules this in principle, and is conclusive of the question.

I regard this case as one of the strongest and most unquestionable to be found in the books of a covenant running with the land. It is like a covenant in a deed to let the grantee into possession of the premises at once, or at a future time. It is necessary to make the grant available.

The covenant in *Spencer's Case*, 1 Smith, Lead. Cas. 145, was that the lessee should build a wall on the demised premises. The sixth point resolved in that case was, if the lessee covenant to repair the houses during the term, it shall run with the land. The reasons given were that, if it was not so, great injustice would be done to the lessor, and that reason requires that they who shall take benefit of a covenant should be bound by it. These reasons apply with great force here. The covenantees would lose all benefit from the construction of the level, and the grantor and covenantor would have all the advantages of the covenant that secured the construction of it, and it would be the greatest injustice to the covenantee. The principle seems to be, in these cases, that something is to be done on the land or estate granted, which is the case here. The case is put of a covenant to cultivate the lands demised in a particular manner. *Cockson v. Cock*, Cro. Jac. 125, and many other cases in point

with this case. In *Norman v. Wells*, 17 Wend. 146, the covenant was by the lessor that he would not let or establish any other mill on the same stream for sawing mahogany. It affected the value of the demised premises, and, in the case put by Judge COWEN, the covenant of the lessor was to repair the demised premises. *Lattimer v. Livermore*, 72 N. Y. 174; *Astor v. Miller*, 2 Paige, 68; *Van Rensselaer v. Dennison*, 35 N. Y. 393; *Thomas' Adm'rs v. Von Kapff's Ex'rs*, 6 Gill & J. 372; *Hurst v. Rodney*, 1 Wash. C. C. 375; *Worthington v. Hewes*, 19 Ohio St. 66. These and other cases cited in the brief of the respondent's counsel establish the same principles of this case. But none of them present so many reasons for the rule as this case. It would be useless to refer to more authorities upon a question on which so much learning and research have been expended. Every case must be brought to the test of the few general principles above stated, and the question can be more satisfactorily determined in that way than by a multiplicity of adjudicated cases, more or less remote in their facts.

The authorities cited by the learned counsel of the appellant appear to be quite inapplicable. The intention of the parties, if it can be ascertained from the agreement, should have weight in cases of doubt, and in this agreement the parties have repeated, in every form, clauses to bind their heirs and assigns, and specifically stipulated that this covenant should "run with the land." But this is no doubtful case. We think the learned circuit court decided the question correctly, and held the present parties liable on the covenant to raise and render the one eighth of the ore granted, and especially to pay for that share of the ore which they have already raised or mined and converted to their own use. We can find no error in the case.

*By the Court.*— The judgment of the circuit court is affirmed.