JOHN S. CHOY *v.* MOTOMU OTAGURO.

No. 2073.

ARGUED OCTOBER 11, AND NOVEMBER 19, 1932.    DECIDED DECEMBER 7, 1932.

PERRY, C. J., BANKS AND PARSONS, JJ.

544

OPINION OF THE COURT BY PERRY, C. J.
(Banks, J., dissenting.)

This is an action for damages for personal injuries resulting to the plaintiff in a collision between a motor cycle which he was riding on a public highway and an automobile driven by the defendant, the essential allegation being that the accident was caused solely by the negligence of the defendant in the operation of his automobile. The jury rendered a verdict for the plaintiff in the sum of $10,000. The case comes to this court on the exceptions of the defendant.

In the examination on the *voir dire* sixteen of the prospective jurors were individually asked by the plaintiff's attorney substantially the following question: "Do you own any stock in the Hartford Insurance and Indemnity Company of Hartford, Connecticut?" One defendant only was named in the action and that was the person charged with having negligently operated the automobile. No insurance company was named as a party defendant. It does not appear from the record that any attorney, agent or other representative of any insurance company conducted the trial on behalf of the defendant or took any part in the proceedings. No evidence was adduced at any time during the trial tending to show that the defendant was insured in the insurance company named or in any other insurance company, nor was there any admission by the defendant or assertion by the plain-

tiff that he was in fact so insured. Each of the questions asked of the prospective jurors, concerning ownership of stock in the insurance company named, was objected to by the defendant "as being incompetent, irrelevant and immaterial," the objections were overruled and exceptions were duly preserved. The contention of the defendant upon these exceptions is that the questions were asked by counsel for the plaintiff in bad faith and for the sole purpose of giving the jurors the impression that the defendant was protected by insurance against any verdict which might be rendered against him by the jury.

It is too clear to admit of doubt that ordinarily in the trial of an action for personal injuries, after the jury is sworn, evidence is not admissible tending to show either that the defendant is insured or that he is not insured. It is ordinarily utterly irrelevant to the issues in such a case whether a policy of insurance has been issued; and yet this simple rule, like other rules, has its exceptions. For example, if a person who is a stockholder, officer or employee of a casualty insurance company which has insured the defendant is called to the stand by the defendant and gives testimony on some or all of the issues in the case, it may properly be shown by the plaintiff on cross-examination of such a witness that he bears the relationship named to that insurance company and this is so because the fact of that relationship has some bearing upon the degree of credibility to be attached by the jury to his testimony. Again, if the plaintiff is able to show an express admission by the defendant, shortly after the occurrence of the accident, to the effect that he, the defendant, was negligent, as for example, because he was looking elsewhere at the time and was not attentive to his duty as a driver, that admission being coupled with a statement to the effect that, "But I don't care because I am carrying casualty insurance," the testimony of such

an admission, including the reference to casualty insurance, would be admissible because, obviously, it would tend to prove, out of the defendant's own lips, that fact and the details of his negligence. There may well be other exceptions to the ordinary rule above stated. If any prejudice results to the defendant in these exceptional instances, by reason of the jury thus gaining the knowledge of the existence of the insurance, that is something which is unavoidable because the plaintiff is entitled to present to the jury the evidence of the defendant's admission against interest.

It is too clear, also, to admit of doubt that in the examination of prospective jurors upon the *voir dire*, a plaintiff is entitled to ask all questions which will aid the presiding judge in determining whether a juror should be excused for cause and also all questions which may enlighten plaintiff's attorney upon the question whether he should peremptorily challenge the juror. R. L. 1925, Sec. 2416, as amended by Act 294, L. 1931. There may be, of course, limits beyond which such an examination should not proceed. No definite statement of those limits can be formulated in advance to apply in any or all cases. Much must be left to the discretion of the presiding judge.

If an insurance company is a party defendant there can be no doubt that a challenge for cause should be sustained in the case of any juror who has disclosed, by his answers, that he owns stock in the company or that he is an officer or agent of the company or that he is employed by it. Obviously, it would not be fair to require the plaintiff to have the case tried by a jury composed of agents or employees of a defendant insurance company. If, on the other hand, an insurance company is not a party defendant, but, in a personal injury case, is the insurer of the defendant and if a prospective juror, under those circumstances, discloses that he is an officer, agent

or employee of the insurance company, without deciding now, for it is unnecessary to do so, that in such a case good ground of challenge for cause would exist, the facts disclosed would certainly justify a plaintiff in exercising his right to a peremptory challenge. If the insurance company is actively defending at the trial so that it is patent to the jurors and all concerned that it is interested as insurer, plaintiff's attorney could properly inquire of the jurors whether any of them were interested in the insurance company. It is always permissible to show interest in order to show bias and prejudice. Instances, however, may well occur when, without its appearing, by proof or otherwise, at the trial, that the defendant carries insurance, plaintiff's attorney has knowledge or information to the effect that a named company is the insurer of the defendant. In such instance he should be permitted to inquire of the jurors concerning their interest in that insurance company. We think that the same rule also should apply in case of a plaintiff who has no knowledge or information on the subject but simply desires to acquire that knowledge and that, for that purpose, he should be permitted to ask the direct question of jurors.

The argument of the defendant proceeds, largely if not wholly, upon the assumption that when jurors are directly informed, or are given cause to believe or to suspect, that a defendant in a personal injury case is insured, immediately those jurors become incapable of performing their duties honestly and impartially and will violate their oaths by deciding too easily in favor of the plaintiff or by awarding the plaintiff a larger amount in damages than they otherwise would. To adopt such a view would be an insult to the intelligence and the fidelity of jurors and to the jury system as a whole. To adopt such a stand would be, in effect, to declare that in any case in which a casualty insurance company is named as

a defendant a just verdict would probably be unattainable. We have confidence that in a personal injury case, whether the insurance company is or is not made a party defendant, the jurors, upon being clearly and emphatically instructed by the court, perhaps during their examination upon the *voir dire* and again at the close of the case, perhaps only at the close of the case, that the sole issue in the case is that of the negligence of the defendant and of the contributory negligence of the plaintiff, and that they must entirely disregard the question of the existence or the non-existence of insurance, will be found capable of heeding that instruction and of rendering a verdict wholly unaffected by the facts concerning insurance. Nowadays it is widely known, by persons who serve on juries as well as by those who do not, that many drivers of automobiles carry insurance, as well as that some others do not carry insurance. The thought that possibly a particular defendant may be insured can as readily occur in a case where no mention is made throughout the trial of the subject as well as in a case where intimations of the probability of such insurance are conveyed to the jurors by the questions asked upon the *voir dire*. In the case at bar the jurors were not in any way informed whether the defendant was insured or was not insured.

The charge that the plaintiff's attorney acted in bad faith in asking the questions concerning the ownership of stock in the Hartford Insurance Company appears to be based, in part at least, upon the theory that the plaintiff's attorney must have well known that none of the prospective jurors owned any such stock. Similar arguments have been sustained in Missouri and perhaps in other jurisdictions, on the ground that there was no real probability that the farmers and farmers' wives who sat on the juries would own any stock in an English company. This court cannot take judicial notice of the fact claimed,

to-wit, that the ownership in Honolulu of stock in an insurance company incorporated in Connecticut is highly improbable. It cannot say that there is widespread knowledge in this community that such is the fact. On the contrary, it is a matter of common knowledge that many persons in these Islands, some of larger means and some of smaller means, have made investments and indulged in speculations in stocks of all manner of companies, whether local or mainland or foreign. If the Hartford Insurance Company, which is named by counsel, does business in Honolulu it certainly must do so through officers or agents who would have a sufficient interest in the financial welfare of the company to justify peremptory challenges, if not challenges for cause. It cannot be said that an inquiry on the subject is so utterly unreasonable as to indicate bad faith.

It has been repeatedly stated, in text books and by courts, that the overwhelming weight of authority is in support of the view that jurors upon the *voir dire* may be asked if they own stock in a named insurance company or any casualty insurance company. However that may be, it is certainly the fact that many courts entertain that view. 56 A. L. R. 1454; 74 A. L. R. 860; 35 C. J. 394. For an elaborate and well-reasoned statement of this view see *Pavilonis* v. *Valentine,* 120 Ohio St. 154. In substantial conformity with this view is the statement of this court in *Fraga* v. *Hoffschlaeger,* 26 Haw. 557, 563, that "it would not be good ground for challenge of a proposed juror that he knew or had read in advance of the trial that the defendant in any given case was thus secured by insurance provided he could answer with satisfaction to the court that he could easily obey the instructions of the court that that fact should not affect his verdict one way or the other."

A prospective juror, Kruger by name, was asked on

the *voir dire,* "Suppose it would appear that the American Factors is the agent or principal,—was concerned in the outcome of this case one way or the other, sometime during this case, if that situation would arise, would that embarrass you in any way?" Another prospective juror, Bond by name, was asked, "Do you think, inasmuch as you represent an insurance company, * * * and are generally on the other side of the fence, as I will put it, that you might be a little partial in judging a case between a plaintiff and a defendant, in an accident case?" A witness was asked, during the trial, "Dr. Culpepper, do you know a Mr. Carpenter of the insurance department of the American Factors?" Even assuming that the mere asking of these questions could reasonably be held to be sufficient to give the jurors an impression not only that the defendant was insured but that the American Factors, a corporation, was the insurer or the agent of the insurer, the views above expressed dispose of the exceptions based upon the asking of these questions.

While, for other reasons, a new trial must be granted, it seems best to express our views upon the foregoing questions for the guidance of the parties and of the court at the new trial and for the guidance of other litigants and courts in personal injury cases.

In the declaration it was alleged that the plaintiff sustained the following injuries: "Fracture of the bones of the left arm and wrist; numerous abrasions and cuts about the face and body; a severe blow upon the mouth resulting in three of his upper teeth being knocked out and two of his lower teeth being knocked out, and causing the remainder of the teeth in his head to be loosened to such an extent that it may be necessary to have them extracted; severe injuries to the nose and the cartilage of the nose; and cuts, bruises and abrasions about the nose." At the trial plaintiff moved to amend by adding an allega-

tion of an injury to one eye as well as an allegation of other injuries. This was objected to on the ground that "it is too late, at this stage of the case, to make an amendment." Counsel for plaintiff then asked defendant, "Do you want time to answer the amendment, at this time?" to which defendant answered in the negative. The amendment was allowed. In this there was no error. Our statute on amendments, section 2360, R. L. 1925, is broad and liberal and clearly permits such an amendment. The only possibility of detriment to the defendant in the allowance of the amendment would be in his being surprised and in not having sufficient time to prepare his evidence on the subject of the new injuries alleged. That there was no such detriment or prejudice is shown by the fact that the defendant stated that he did not desire delay.

During the cross-examination of the plaintiff he was asked: "On June the 9th a demand was served upon your attorneys asking if you would submit to an examination by the following named doctors: Dr. A. L. Craig, Dr. Van Poole and Dr. Allan Harwell and was refused by your counsel. Was that with your consent?" An objection on the ground that "it is incompetent, irrelevant and immaterial, and not cross-examination," was sustained. The defendant then offered to prove that "if the witness were permitted to answer that question * * * he would admit that such a demand was made and that the demand was refused." An objection to the offer was sustained. Counsel for the plaintiff then said: "At this time we are willing to have Dr. Craig, Dr. Van Poole or Dr. Harwell, or any of them, come into court and examine this man," to which counsel for the defendant replied, "I don't believe a physical examination can be made in the open court room." The question of the correctness of these two rulings is presented by the exceptions. It is well settled that a court cannot order a plaintiff, in an action for

injury to the person, to submit to a surgical examination in advance of the trial. The Supreme Court of the United States has so held. *Union Pacific Railway Co.* v. *Botsford,* 141 U. S. 250. It is equally well settled that if a plaintiff "unreasonably refuses to show his injuries, when asked to do so, that fact may be considered by the jury, as bearing on his good faith, as in any other case of a party declining to produce the best evidence in his power." *Railway Co.* v. *Botsford, supra,* p. 255. "No doubt, in general, a refusal to be examined by a proper doctor sent by the other side would be admissible in evidence and would be a proper subject for severe comment and a ground for adverse inference, at the very least." *Stack* v. *Railroad,* 177 Mass. 155, 159. On the main issue in the case at bar as to what was the proximate cause of plaintiff's injuries and as to whether the defendant was guilty of negligence, the testimony of the plaintiff and that of the defendant were in direct conflict. Because of the refusal of the plaintiff to permit an examination by the three named doctors in advance of the trial (that there was a refusal, see below), the defendant was unable to offer any medical testimony on the subject of the extent or the permanency of the plaintiff's alleged injuries and, necessarily, the case went to the jury on that issue, very largely upon the testimony adduced by the plaintiff. It became important, therefore, to the defendant to show if he could, by cross-examination of the plaintiff, that he had refused to comply with the request for an examination by the three doctors. Nor was the error cured by the offer of the plaintiff to have the doctors make the examination in open court. It is easily apparent that such an examination could not· be satisfactorily made in open court or away from the doctors' own offices with the facilities there available for such a purpose. This error was highly prejudicial and must

result in a new trial.

What is said in the last preceding paragraph disposes of the only contentions which were advanced, on the subject of these rulings, in the briefs and at the original oral argument. Subsequently the court, for the first time, suggested for consideration the question whether the rulings should be affirmed on the ground that the question addressed by the defendant to the witness assumed as a fact that which at that moment had not been proven to be a fact, to-wit, that the demand had been made and that it had been refused. For a better understanding of what occurred in the trial court on this subject, the following is copied from the transcript of the testimony and of the proceedings had. Nothing else was said or done on the subject. "Q. Mr. Choy, on June the 9th a demand was served upon your attorneys asking if you would submit to an examination—Mr. Patterson: That is objected to. I wish counsel would make an offer of proof, if there is any more of this coming out. The Court: Finish your question, first. Q. (Continued)—by the following named doctors: Dr. A. L. Craig, Dr. Van Poole, and Dr. Allan Harwell and was refused by your counsel. Was that with your consent? Mr. Patterson: That is objected to on the ground it is incompetent, irrelevant and immaterial, and not cross-examination. We assign the question and the conduct of counsel as error and at this time ask for the withdrawal of the jury and entry of a mistrial in this case, your Honor. The Court: The objection is sustained, but the withdrawal of the jury at this time and the ordering of a mistrial is denied. Mr. Beebe: Exception. We will offer to prove—Mr. Patterson: To which we save an exception. We also object to any offer of proof not made in the absence of the jury. I would say at this time if Mr. Beebe wants to call any doctor in Honolulu into the court room for the purpose of examining this man in the

presence of the jury, we have no objection. The Court: Do you wish to make an offer of proof? Mr. Beebe: Yes. The Court: Gentlemen, you are excused until called. (The jury retire from the court room.) Mr. Beebe: We will offer to prove that if the witness were permitted to answer that question that he would admit that such a demand was made, and that the demand was refused. Mr. Patterson: We object to the offer upon the ground it is incompetent, irrelevant and immaterial, and not cross-examination,— not within the issues. The Court: The objection is sustained. Mr. Beebe: I note an exception, if your Honor please. Mr. Beebe: At this time, while the jury is out, we would like to offer in evidence our demand letter and the writing. Mr. Patterson: We will state at this time we are willing to have Dr. Craig, Dr. Van Poole or Dr. Harwell, or any of them, come into court and examine this man. Mr. Beebe: I don't believe a physical examination can be made in the open court room. Do you want his clothes taken off, and—Mr. Patterson: Yes. (Argument) Mr. Beebe: You will admit, however, that this letter was written to you and delivered to you and was refused? Mr. Patterson: No refusal Mr. Beebe. (Discussion) Mr. Ridley: At the time I made the demand you refused it. Mr. O'Reilly: Mr. Beebe and Mr. Ridley were informed, together, that we would take this matter up at the trial. Mr. Ridley: At the time I delivered this on Friday he refused it. Mr. Beebe: Mr. O'Reilly came in the next day and saw me and said it would be taken up in court. Mr. O'Reilly: You admit that? Mr. Beebe: Yes, certainly. I have exceptions throughout that last, haven't I? The Court: Exception noted."

Possibly the question was open to the objection that it assumed as a fact something which had not at that moment been proven. In our opinion that objection was waived. Such an objection, to be good on appeal, must be

noted promptly, as soon as the opportunity to do so presents itself. The defect is of such a nature that it could well have been cured by counsel for the defendant if the objection had been made on that ground. It would have been a very simple matter for counsel to have reformed the question by asking the witness whether a demand had been made and whether the demand had been refused and whether he had assented to or authorized the refusal. No such specific objection was stated by counsel for the plaintiff at the time. His objection, as noted, that "it is incompetent, irrelevant and immaterial" did not include or present for consideration the ground that it assumed an unproven fact. Certainly the objection of immateriality and irrelevancy did not include that ground. In our opinion the objection of incompetency likewise did not include it. There seems to be some considerable doubt in the minds of courts and text-writers as to just what the objection of "incompetency" includes. We understand that that objection has no reference to any defect of form which can be readily cured by restating the question.

There is another and perhaps more important consideration leading to the same conclusion, and that is that as we read the above quoted record of what was said and done on this subject at the trial, both parties and the court all understood that what was being objected to was any effort by the defendant to prove that the plaintiff had refused to submit his body to an examination by doctors chosen by the defendant. They were clearly not discussing the mere form of the question. They were not considering whether the question could be reframed so as to meet some preliminary and practically unimportant objection. They were, all of them, considering the essential and far more important question, whether the plaintiff's credibility could be attacked by showing that he had re-

fused to submit himself to an examination by the defendant's doctors. We feel unable to read the record otherwise. If this is a correct view of what was under discussion at the trial and of what court and counsel understood, then, clearly, any possible objection concerning the assumption of an unproven fact was not intended to be raised, was not considered and was waived by the plaintiff.

Discussions are to be found in the books relating to the distinction between "general" objections and "specific" objections and distinctions, on appeal, between rulings sustaining objections to evidence and rulings disallowing the objections. There can be no doubt that the making of an objection upon a specific ground is a waiver of all other objections. Sometimes it is said that when the objection is "general" it does not operate as a waiver. The latter would seem to be upon the theory that the objection is so general, so broad, that it can and should be understood to include every possible objection of which the question or testimony is susceptible. That is not the case with an objection to evidence on the ground that it is "incompetent, irrelevant and immaterial." The witness was not incompetent to testify on the subject. It was thoroughly competent, as we are holding above, for the defendant to prove, if he could, that the plaintiff refused to comply with the demand for a physical examination,—this because that fact would tend to show, or might be argued reasonably to show, that the plaintiff's testimony was not credible or reliable. The testimony offered was not intrinsically illegal. That we have held. The trial judge's view that it was not material, relevant or competent to prove the refusal of the plaintiff was erroneous. The defect now under consideration and suggested as above stated, only by this court, concerning the assumption of an unproven fact was remediable and doubtless would have been remedied promptly if the objection of the plain-

tiff had called the defect to the attention of the court and of opposing counsel. In our opinion the error of the trial judge in sustaining the ground of the objection which was presented is not cured by the existence of the defect in the form of the question and is reversible.

It need scarcely be added that the question which was asked was proper cross-examination. In order to preserve, for review in this court, the claim of error in the ruling sustaining the appellee's objection, it was not necessary to make an offer of proof. That is never required on cross-examination. But although an offer of proof was unnecessary for the purpose just stated, it was entirely proper for the defendant to make such an offer; and he did make it. The court refused to permit the proof to be made. If its ruling in this respect was erroneous it constitutes an additional error leading to the conclusion that a new trial must be granted. At this point it is said that there can be no error in disallowing an offer of proof when there has not been a preceding question addressed to a witness on the stand calling for the evidence which in its offer the party claims will be given. In the case at bar, however, as above appears, there was such a preceding question, one which was good in substance and should have been allowed. The only objection to it which might have been good, as above stated, is one of form and it was waived. Moreover, if there was any requirement of law or of correct procedure that there must be a preceding question to a witness on the stand before there can be a good offer of proof, the necessity of such a preceding question was waived by counsel for the appellee when he said, immediately upon the asking of the question above discussed, addressed to the plaintiff, in fact even before the question itself was completed, "That is objected to. I wish counsel would make an offer of proof, if there is any more of this coming out." The appellee thereby

expressed his preference that there should be an immediate offer of proof without the asking of any other questions and without even the completion of the question which was asked. Counsel for the appellant then did exactly what counsel for the appellee asked him to do,—he made an offer of proof. The defendant's offer was "to prove that if the witness were permitted to answer that question that he would admit that such a demand was made, and that the demand was refused." The question named June the 9th as the date of the demand. We think that the offer of proof was sufficiently definite. If it be said that from the colloquy which followed the making of the offer it appears that the utmost that the defendant could prove was that when the demand was made plaintiff's counsel replied that they "would take this matter up at the trial," that the matter "would be taken up in court," our view is that this was the equivalent of proof of a refusal to comply with the demand. At the time of the making of the demand counsel for the plaintiff did not even say, as has been assumed in argument, that permission for a physical examination would be granted at the trial but what they said was that the matter "would be taken up at the trial." This was an undertaking that the question would be *considered* at the trial but was not an undertaking that the permission would then be granted. But even if it were otherwise the answer constituted a refusal. Certainly the demand was not then complied with. The plaintiff did not submit himself for examination. He simply put off the defendant with an answer which was not a compliance. As a matter of law we think that it could only be construed as a refusal. The offer to prove should not have been disallowed.

The presiding judge instructed the jury that in estimating the damages "you may consider whether or not the plaintiff suffered mental and physical pain on account

of his injuries" and "you should * * * consider his physical condition before and since the injuries for which he sues, as shown by the evidence, the physical and mental anguish suffered by him on account of his injuries at the time of and since such injuries, as shown by the evidence, and such mental anguish and physical and mental pain, if any, as you may from the evidence find it reasonably certain he will suffer in the future therefrom." These instructions were objected to, the objections were over-ruled and exceptions noted. While under some circumstances, as in cases of serious bodily injury and physical suffering, mental anguish and suffering may be inferred from the mere fact of physical injury and pain, nevertheless, in the absence of express testimony of mental pain, the jury should be limited in its award for mental pain to that which is found to be the necessary and inevitable consequence of the physical injuries and physical suffering. See, for example, *Kennon* v. *Gilmer*, 131 U. S. 22, 26, and *McDermott* v. *Severe*, 202 U. S. 600, 611. There are some physical injuries from which jurors, from their experience, may reasonably infer, without direct evidence, that a plaintiff has also suffered mentally. But there may be other and less serious injuries which would not of themselves justify an inference of inevitable mental anguish,—injuries from which mental pain would result in the cases of some individuals but not in the cases of others. In these instances, direct evidence that the plaintiff suffered mentally would be necessary. It is not necessary in the case at bar to say whether the instructions given can be sustained in the light of the evidence adduced as to the nature of the physical injuries suffered by the plaintiff. Upon a new trial, which is being granted upon other grounds, the question can be avoided by greater care in the preparation of the instructions as well as by the adduction of evidence by the plaintiff, tested on cross-

examination by the defendant, tending to show directly whether and to what extent the plaintiff did suffer mental anguish and pain.

Whether a verdict in the sum of $10,000 was excessive under the circumstances that were proven need not be determined at this time. A later verdict, even if in favor of the plaintiff, may or may not be in the same amount and a decision of the point at this time could not serve any useful purpose.

The exceptions are sustained, the verdict is set aside and a new trial is granted.

*F. Patterson* and *W. T. O'Reilly* (also on the brief) for plaintiff.

*C. A. Gregory* (*Smith, Wild & Beebe* on the briefs) for defendant.

### DISSENTING OPINION OF BANKS, J.

I am unable to agree with the majority of the court regarding the proposition of law upon which the reversal of the judgment in the instant case is based.

When the defendant's counsel sought on cross-examination to elicit from the plaintiff testimony which was material to his client's defense it was incumbent upon him to frame the question in such a manner as to render it free from legal objection. This he did not do. The question was open to the obvious objection that it assumed as facts two things concerning which there was at the time it was propounded no evidence whatever, the facts assumed being that on June 9 a demand was served upon the witness's attorneys asking if he would submit to an examination by Doctors Craig, Van Poole and Harwell and that the demand was refused by witness's counsel.

The rule that such a question is improper has been so long established and so consistently adhered to by courts of last resort that it is no longer a subject of controversy.

It is thus stated in 2 Nichols, Applied Evidence, p. 1989, § 24: "Questions assuming a fact or facts not proved in the case ought not to be asked and are improper." Many cases are cited in support of the text. In *Tenny* v. *Mulvaney*, 8 Ore. 513, 518, 519, where such a question was propounded to a witness and an objection on the ground that it was irrelevant and incompetent was *overruled,* the court said: "We do not think that a question which assumes as a fact that which is the object of a question to prove, is competent. To elicit competent evidence it must be by an appropriate question directed to the fact in controversy." It seems to have been the intention of the court to decide that even in a case where an objection to a question on the ground of incompetency is *overruled* and the question is answered and the action of the court on appeal is assigned as error, the ground upon which the objection was based, namely, *incompetency,* was sufficient to include the defect that the question assumed as a fact something about which there was no evidence and therefore should have been disallowed. If this is sound law, and I am inclined to think it is, the objection to the question now under consideration on the ground of incompetency was sufficiently specific to include the obvious defect that it contained an unwarranted assumption of facts and therefore there was no waiver of this defect.

Whatever criticism there may be of the rule laid down in the Oregon case, as it was there applied, and accepting defendant's contention that an objection to a question on the ground of *incompetency,* like an objection on the grounds of irrelevancy and immateriality, is a general objection as contradistinguished from a specific objection, I am of the opinion that when the objection is *sustained,* as in the instant case, the trial court, on appeal, cannot be put in error if there is any legal imperfection appear-

ing in the question itself. I think the law in this regard is very clearly stated in 1 Wigmore on Evidence (2 ed.) 184, where the author says: "But when a general objection is *sustained* by the trial court, it may be presumed that some valid ground was apparent to the judge without express statement; and as the exception is here to be taken by the proponent of the evidence, it is fair to insist that he should have asked for the specific ground of objection, if he did not perceive it; or should have made an offer to obviate it, if he did perceive it; or should have stated clearly the precise basis of his claim for admissibility, if he had rested on any specific ground. Hence, the general objection will suffice, if on the face of the evidence and the rest of the case there appears to be any ground of objection which might have been valid (or, otherwise stated, if there is any purpose for which the evidence would conceivably be inadmissible)." It is more succinctly stated as follows in 38 Cyc. 1386: "Where evidence is excluded on a general objection the action of the court will be sustained if any tenable objection to its admission in fact existed." In *Mine & Smelter Supply Co.* v. *Parke & Lacy Co.,* 107 Fed. 881, 884, the court said: "Moreover, the objection that the question was 'immaterial and improper' amounted to nothing more than a general objection; and the rule is well settled that, 'when evidence is excluded upon a mere general objection, the ruling will be upheld, if any ground in fact existed for the exclusion. It will be assumed, in the absence of any request by the opposing party or the court to make the objection definite, that it was understood, and that the ruling was placed upon the right ground.'" In *Tooley* v. *Bacon,* 70 N. Y. 34, 37, the court said: "When evidence is *excluded* upon a mere general objection, the ruling will be upheld, if any ground in fact existed for the exclusion. It will be assumed, in the absence of any request by the opposing party

or the court to make the objection definite, that it was understood, and that the ruling was placed upon the right ground." *Prouty L. & B. Co.* v. *Cogan,* 101 Ore. 382, 388, lays down the same rule. There the court said: "Again, it is said that a reason for the rule against general objections is that it is unfair to the trial court to make a general objection without particular specification of the grounds of the objection. But in good reason, if the trial judge is possessed of sufficient legal acumen to recognize the validity of the legal conclusion suggested by the general objection, he is at liberty to decide the point and exclude the evidence offered. If for his own information the adverse party requires a more specific objection, he should move for the necessary specifications. He cannot rightly speculate on the decision of the court and then complain that the objection is too general. It is quite as much his duty to be fair to the court as it is that of the other party. Moreover, if he would prevail on appeal, he must put his finger on the error complained of." Speaking on this subject the supreme court of Wisconsin (*Rosenberg* v. *Sheahan,* 148 Wis. 92, 95, 96) said: "Counsel cite many cases to show that the court below erred in rejecting the evidence because the objection thereto was not specific. The fact seems to have been overlooked that the cited cases are of trials where there was a general objection, the evidence was received, and it was held proper because of competency for a court to do so, the objection not being specific; and overlooked the companion rule that if, in face of a general objection, only, the court rejects the evidence the ruling will not be reversed on appeal if it appears that the evidence was objectionable upon any specific ground. There, it is to be presumed, the specific infirmity was the deciding factor, and it was competent for the trial court to take efficient notice thereof though it was not bound to do so. *Pettit* v. *May,* 34

Wis. 666; *Nicolai* v. *Davis,* 91 Wis. 370, 64 N. W. 1001; *Crawford* v. *Witherbee,* 77 Wis. 419, 46 N. W. 545; *Evans* v. *Sprague,* 30 Wis. 303, and many similar cases which might be cited, are all instances where the evidence was received and it was held not error because the objection was general. True, it is the rule that where evidence is rejected under a general objection and a contrary ruling would have been called for upon a specific objection, and counsel making the offer requests the court to specify the particular ground for the adverse ruling for the purpose of obviating it, it is improper to refuse to do so; *Colburn* v. *C., St. P., M. & O. R. Co.,* 109 Wis. 377, 85 N. W. 354; but that is not this case, and is in harmony with the general rule stated. This is elementary: 'The rule that the objection should be specific has no application, however, where a general objection is sustained; in that case the party against whom the ruling was made cannot urge that the objection was too general.' Jones, Ev. (2d ed.), § 894 (897); 8 Ency. Pl. & Pr. 229; 1 Wigmore, Ev., § 18."

I know of no judicial precedent for a different rule. It seems the statement of a mere truism to say that if a party wishes to elicit from a witness material testimony he must do so by first propounding to the witness a question that conforms to legal rules. If he does not do this and his question, on objection, is disallowed he cannot complain that he was denied the benefit of the testimony he desired to present unless the infirmity of the question was waived.

I am unable to agree with the majority of the court that the failure of plaintiff's counsel to call attention to the obvious infirmity of the question propounded to the plaintiff was a waiver of its patent infirmity. Such a conclusion would place the burden solely on the one objecting to a question to point out specific objections,

if there were any, and would relieve the one propounding the question from all obligation to reframe his question if he knew of its imperfection, or, if he did not perceive it, of asking opposing counsel to make his objection specific. So far as I know none of the cases or text writers sustain this view. On the contrary, according to the authorities I have cited, the rule seems to be the other way. The only obligation of the objector is to state any specific ground he may have if he is called upon by opposing counsel or the court to do so. If no such request is made of him he is under no duty to speak. There is nothing in the record to indicate that the objector to the question was requested by the court or the propounder of the question to make his objection specific. If this had been done and the objector had declined to speak, or speaking had disclaimed any intention to interpose a specific objection, I think he would now be estopped from asserting that there was one.

I am also unable to agree with the majority that the expressed wish of plaintiff's counsel that defendant's counsel would make an offer of proof was a waiver of the structural defect in the question. The transcript shows that the following occurred in this regard: "Q" (by Mr. Beebe, defendant's counsel) "Mr. Choy, on June the 9th a demand was served upon your attorneys asking if you would submit to an examination—Mr. Patterson: That is objected to. I wish counsel would make an offer of proof, if there is any more of this coming out. The Court: Finish your question, first. Q (Continued)—by the following named doctors: Dr. A. L. Craig, Dr. Van Poole, and Dr. Allan Harwell and was refused by your counsel. Was that with your consent?"

It will be observed that the statement of plaintiff's counsel regarding an offer of proof was made before the question was completed, and not until it was completed

and the objection to it sustained was an offer of proof made. If the offer of proof had not been objected to and the fact which the defendant desired to establish had thus gone to the jury the plaintiff would obviously be in no position to now urge that the question propounded to the witness was objectionable on any ground. But under the circumstances as they appear in the above-quoted portion of the record I do not perceive any connection between the statement of plaintiff's counsel and a waiver of what I believe to be an imperfection in the question put to the plaintiff. Under the rule announced by the majority it would seem to follow that if a suggestion is made by counsel, when a question is only partly finished, that an offer of proof be made, such suggestion precludes him from thereafter objecting to the question when it is completed. What plaintiff's counsel said about an offer of proof was surely not sufficient to mislead defendant's counsel into believing that the question was free from objection, especially when an objection was made and acted upon at the conclusion of the question.

The colloquy between counsel, recited in the majority opinion, I think does not affect the situation now under consideration. The upshot of this colloquy was that counsel for plaintiff admitted that counsel for defendant had written a letter to him requesting that plaintiff permit certain doctors to examine him and it was admitted by counsel for defendant that in reply to this request plaintiff's counsel stated that the matter would be taken up in court. This was not the question propounded to the plaintiff on cross-examination nor were the facts, as they were disclosed by the colloquy, identical with those included in the defendant's offer of proof.

For the foregoing reasons I think the verdict of the jury should not be disturbed and the judgment of the circuit court should be sustained.