# MARTIN UHLMAN and Another v. FARM, STOCK AND HOME COMPANY.[1]

July 3, 1914.

Nos. 18,610—(151).

**Libelous words.**

1. Written publications calculated to injure a man's character and to lower him in the confidence and respect of his fellow men are, if false, libelous *per se*. The publication here in question is within this rule.

**Notice to retract.**

2. Under G. S. 1913, § 7901, it is not indispensable that the notice of retraction specify each particular part of a published article which contains false and defamatory matter. It is sufficient if from the article and the notice together the publisher can, without difficulty, determine the words that contain the sting and which it is expected to retract.

**Pleading truth of charge — evidence admissible.**

3. Where the article was called forth by a particular sale transaction, and in effect charges generally that plaintiffs were crooks and dishonest, and defendant pleads the truth of the charge, any evidence tending to prove that plaintiffs perpetrated a fraud in the sale is pertinent to the issue. It is proper to show that the thing sold was worth much less than the selling price, that plaintiffs knew it, and that they made false representations in the sale. Evidence of what the article sold for in the market is material evidence of its value.

**Offer of proof.**

4. Where proof is sought to be elicited on cross-examination, and is excluded, it is not necessary to make an offer of proof to present the question for review.

**Examination of adverse party — impeachment.**

5. Where an adverse party is called for cross-examination under the stat-

[1] Reported in 148 N. W. 102.

Note.—The authorities on the question of truth as a defense to a civil action for libel or slander are discussed in notes in 21 L.R.A. 502 and 31 L.R.A.(N.S.) 132.

ute, the party calling him may impeach or contradict him. The attention of a witness may be called to testimony given by an adverse witness, and he may be asked if such testimony is true.

Action in the district court for Hennepin county by the partners composing the firm of Martin Uhlman & Co. to recover $15,000 for libel. The answer among other matters alleged that the supposed defamatory matter set up in the complaint was true and each and every statement therein contained was true. It also alleged that the written warranty precluded evidence of the oral guaranty made to the farmers mentioned in the opinion, which fact the farmers did not know. The case was tried before Steele, J., who when plaintiffs rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $500 in favor of plaintiff. From an order denying its motion for a new trial, defendant appealed. Reversed and new trial granted.

S. R. Child, Benjamin Drake and Sherman Child, for appellant.
Kerr, Fowler, Ware & Furber, for respondent.


HALLAM, J.

Action for libel. Defendant is a publisher of a newspaper called "Farm, Stock and Home," circulated among farmers as a farm paper. On August 23, 1910, plaintiffs were engaged in the business of traveling among farmers selling stallions. They sold to a number of farmers of Redwood county a Percheron stallion for a price of $3,000. In fact the animal was sterile and was worth not to exceed $300. The contract of sale contained a guaranty that if the stallion did not get 70 per cent of foals, with proper care and handling, plaintiffs would replace him with another of the same price upon return of the stallion in as sound condition as at the time of sale. The stallion died November 13, 1911. This guaranty was accordingly of no avail. The contract contained the further stipulation that, in the event of the stallion's death before the end of three breeding seasons, plaintiffs would replace him with another of the same price for the sum of $1,000.

On January 15, 1912, defendant published the article complained

of. It was called forth by this sale transaction and it comments especially thereon. It was entitled

## "THE HORSE.

## "USE SENSE IN BUYING."

It advises caution in buying stallions, warns farmers against strangers selling them, states that every man has to grab his own particular "hot poker" before he will believe that it will burn him, describes this contract as a "good grab at the hot poker" by the farmers, and it then contains the following:

"There appears to be but two ways open to the 'hot poker' crowd; either to cash up that other $1,000 to a precious bunch of crooks, or else to smile and pocket their $3,000 experience in horse buying. Candidly, F. S. & H. thinks they got off cheap. Doubtless they have learned their lesson. Will it help anyone else? Probably not!"

"How to avoid such a muddle: In the first place, let traveling stallion peddlers alone. Let them alone! They are as straight as a rail fence and as honest as Ananias!"

1. This language, if untrue, is undoubtedly libelous *per se*. It in effect charges plaintiffs with being "a precious bunch of crooks" and "as straight as a rail fence and as honest as Ananias." This is a libel. Written publications calculated to injure a man's character and to lower him in the confidence and respect of his fellow men, are, if false, libelous *per se*. Byram v. Aiken, 65 Minn. 87, 67 N. W. 807; Davis v. Hamilton, 85 Minn. 209, 88 N. W. 744. This publication is within the rule. Defendant contends the publication was privileged, and that the court should have given the jury the law as to privileged communications. There was no request to so charge and no exception taken to the charge. This question is therefore not before us. No material evidence pertaining to the question of privilege was excluded.

2. Plaintiffs demanded a retraction under G. S. 1913, § 7901. This statute provides:

"In an action for damages for the publication of a libel in a news-

126 M.—16.

paper, the plaintiff shall recover no more than special damages, unless a retraction be demanded and refused as hereinafter provided. He shall serve upon the publisher * * * a notice, specifying the statements claimed to be libelous, and requesting that the same be withdrawn. And if a retraction thereof be not published in as conspicuous a place and type in said newspaper as were the statements complained of, in a regular issue thereof published within one week after such service, he may allege such notice, demand, and failure to retract in his complaint, and may recover both special and general damages if his cause of action be maintained."

On February 9, 1912, plaintiffs made demand on defendant for a retraction. The demand was in the following language:

"To Farm, Stock and Home Co.,

"Publisher of Farm, Stock and Home:

"You are hereby notified that the article published by you in 'Farm, Stock and Home' on the 15th day of January, 1912, of and concerning the undersigned, a copy of which is hereto annexed and marked Exhibit 'A' was and is libelous, false and defamatory, and you are hereby requested that the same be withdrawn.

"Martin Uhlman & Co.

"By Martin Uhlman,

"F. P. Lewis."

No retraction was made.

It is claimed this notice is insufficient to constitute a compliance with the statute, because not all of the language of the article is libelous, and the notice does not specify any particular statement as libelous. We think the notice sufficient, and so hold. The whole article pertains to the same subject-matter. It is not a long one. Taking the article and the notice together, the publisher could have no difficulty in determining the words that contained the sting and which it was expected to retract. "It does not follow that because some portions of a published article may not be libelous per se, when considered separately, the notice must specify each particular part which contains the essence of the false and defamatory matter." Craig v. Warren, 99 Minn. 246, 109 N. W. 231.

3. The serious questions in the case arise out of the exclusion of evidence offered by defendant. One of the defenses alleged was

that the charges made in the article were true, that is, that the plaintiffs were in fact "crooks" and "dishonest." Defendant was entitled to offer any competent evidence in proof of this defense. Any evidence, tending to prove that plaintiffs in fact perpetrated a fraud on the farmers in the sale of this stallion, was naturally pertinent to this issue. Several of the errors assigned relate to the rejection of such evidence. By a witness named Burkey, who had owned an interest in the stallion for part of two seasons, having purchased him from Hopley & Sons, the importers, defendant offered to prove that the animal was absolutely sterile and that the witness so advised Hopley & Sons, and returned him for that reason. Defendant claimed that Hopley & Sons then sold the horse for less than he would have brought as a gelding. Defendant's counsel then questioned Uhlman as to the price plaintiffs paid, as to whether he did not know of the character of the horse and of the fact claimed that Hopley & Sons sold him for the price of a gelding because he was not a sure foal getter. Uhlman having denied that he made any representations to the farmers that the horse had proven a sure foal getter, defendant called witness George Schwandt and asked if Uhlman did so represent. All of this testimony was excluded. We think it should all have been received. It had a material bearing on the truth of the publication.

The circumstances of the sale of the stallion by plaintiffs carry strong suspicion of fraud. He was sold for ten times his value and with a guaranty so framed that it was not a full protection to the buyers.

As tending to prove fraud, it was proper to show that the sterility of the stallion had been amply demonstrated before plaintiffs sold him, that plaintiffs knew of this fact, and that they nevertheless represented him to the farmers as a sure foal getter.

It was proper to show the price plaintiffs paid and that plaintiff knew that the horse had previously been sold for the price of a gelding. Evidence of what an article sold for in the market is material evidence of its value. Pfiffner v. Stillwater & St. Paul R. Co. 23 Minn. 343; Harrow v. St. Paul & Duluth R. Co. 43 Minn. 71, 44 N. W. 881; Humphreys v. Minnesota Clay Co. 94 Minn. 469, 103

N. W. 338; Schall v. Northland Motor Car Co. 123 Minn. 214, 143 N. W. 357. And if the price be but a small portion of what a perfect article of this kind is worth, it is some evidence of its imperfection.

4. It is true it was not made to appear by offer of proof or otherwise what answers plaintiff Uhlman would have made to these questions, but this is not necessary where the proof is sought to be elicited on cross-examination of an adverse witness or party. In such case the rule is that, if appropriate questions are asked and due exceptions taken to the ruling sustaining objections thereto, the correctness of the ruling is presented for review without an offer or statement of what the cross-examiner proposes to elicit. The reasons for making a distinction in this respect between the direct examination of a friendly witness and the cross-examination of an adverse witness are obvious. Elliott, App. Proc. § 747; Heagy v. State, 85 Ind. 269; Martin v. Elden, 32 Oh. St. 282. See also In re Brown, 38 Minn. 112, 35 N. W. 726; Cady v. Cady, 91 Minn. 137, 139, 97 N. W. 580.

5. Plaintiff Uhlman, when cross-examined under the statute, was asked, in substance, if he made a representation to one Schwandt that the horse had been proven a sure foal getter. He denied that he had. Schwandt was then called and was asked, "Did he say to you that the horse had proven a sure foal getter?" This was objected to as leading and the objection was sustained, the court also ruling that he would permit no impeachment of plaintiff. Both rulings were error. Where an adverse party is called for cross-examination under G. S. 1913, § 8377, the party calling him may either impeach or contradict him. Schmidt v. Durnam, 50 Minn. 96, 52 N. W. 277. The form of the question was not objectionable. The attention of a witness may be called to testimony given by an adverse witness and he may be asked if such testimony is true.

It may be that the exclusion of the evidence of witness Schwandt was not reversible error by reason of other testimony of this and other witnesses covering the same subject-matter, but the other errors mentioned were clearly prejudicial, and on account of these errors a new trial must be had.

Order reversed and new trial granted.