The STATE of North Dakota,
Plaintiff and Appellee,

v.

Reuben R. ENTZE, Defendant
and Appellant.

Cr. No. 648.

Supreme Court of North Dakota.

Nov. 28, 1978.

Thomas M. Tuntland, Asst. State's Atty., Mandan, for plaintiff and appellee; submitted on the brief.

Freed, Dynes, Malloy & Reichert, Dickinson, for defendant and appellant; argued by Ronald A. Reichert, Dickinson.

ERICKSTAD, Chief Justice.

The defendant, Reuben R. Entze, was charged in Morton County with the crime of driving a motor vehicle while under the influence of intoxicating liquor. Upon a plea of not guilty, he was tried before a jury that returned a verdict of guilty on April 22, 1978. The county judge with increased jurisdiction in a document entitled Judgment of Conviction sentenced Entze to confinement in the county jail for 30 days, assessed a fine of $260, assessed costs of $15, and suspended the jail sentence upon certain conditions involving, among other things, treatment for alcoholism. Entze appeals from the judgment, contending that the trial court erred in prohibiting defense counsel from cross-examining a witness for the State upon his qualifications as a Breathalyzer operator. We affirm.

The narrow issue in this case is whether or not the trial court erred in prohibiting Entze's counsel from cross-examining the operator of the Breathalyzer as to his qualifications as a Breathalyzer operator. The defense counsel was not limited otherwise in his cross-examination of the Breathalyzer operator.

The issue arose after Joe Ellefson, the deputy sheriff of Morton County, testified concerning the circumstances of Entze's arrest on highway 10, approximately six miles west of Mandan. Ellefson testified that about 1:30 in the morning of the 22nd day of November, 1977, while on duty parked in his vehicle approximately four miles west of Mandan on highway 10, he observed the vehicle that Entze was driving cross the center line as it passed the point on the highway across from where Ellefson's vehicle was parked at an approach. He said that he then followed Entze's vehicle for about a mile during which he observed the vehicle cross the center line on two other occasions; that he then attempted to stop the vehicle by activating his portable red light, and when this did not seem successful he used his siren. The vehicle then left highway 10 and proceeded onto highway 25 in a northerly direction where it stopped. Ellefson stopped his vehicle behind Entze's vehicle and then asked Entze to do a number of field tests to determine whether or not he was under the influence, and when he decided that Entze was under the influence, he informed him of the charge and asked him to return to Mandan where police officer Al Fischer proceeded to give Entze the Breathalyzer test.

Pages 71 through 82 of the transcript involve the direct examination of Fischer by counsel for the State, during which a number of documents were received in evidence to establish, among other things, the qualifications of Fischer to operate the Breathalyzer. Fischer testified that to that date he had conducted the Breathalyzer examination about 136 times.

Pages 83 through 113 of the transcript involve Fischer's testimony, describing how he performed the 24 steps in operating the Breathalyzer, from checking out the machine in the beginning to clearing the machine in the end.

Exhibit 8 was received at the end of this testimony and consisted of a record of the various steps that were taken and the results of the test. The results of the test were that Entze's blood contained 0.13 percent by weight of alcohol.

After Exhibit 8 was received in evidence, counsel for the State asked Fischer if he

had an opportunity to observe Entze and, if so, whether or not he had formed an opinion as to whether or not Entze was under the influence of intoxicating liquor. Fischer testified that he had an opportunity to observe him, that he had observed others under the influence, and that it was his opinion that Entze was under the influence of intoxicating liquor.

Counsel for Entze was then permitted to cross-examine Fischer, and his objection arises from the treatment he then received in conjunction with that effort. The cross-examination and the ruling of the court follows:

"Q Mr. Fischer, where did you take your training in breathalyzers?

"A In Bismarck.

"Q Where at?

"A It was given at—it would be the Law Enforcement Academy.

"THE COURT: The Court is going to find that this line of questioning is irrelevant. His certificate has shown that he's certified as an operator, and it's the same thing as showing that he's qualified to operating it, and those questions to qualifications and training and so forth are irrelevant because the Statute allows that certificate to be offered in evidence.

"MR. REICHERT: Your Honor, do I understand your ruling to say that I can't cross-examine this officer about anything he did?

"THE COURT: I didn't say that. I didn't say that. With regard to his qualifications, the certificate shows that he's qualified, and that's been admitted in evidence. So in the area of qualifications to operate the breathalyzer, any questions would be irrelevant.

"MR. REICHERT: Your Honor, I will object to this ruling that under the law of North Dakota the jury is the final determiner of the admissibility or the introduction of any evidence. The jury still retains that province.

"THE COURT: The evidence has been admitted. Anything that you—questions that you might have with procedures might go to the weight and whether he did it properly. ‘

"MR. REICHERT: I would appreciate it if the Court could—I'm lost. I cannot ask any questions about his qualifications as an operator?

"THE COURT: You can ask him about the procedures that he did doing this test. As to his training and history, the certificate indicates that he's qualified, and that establishes his qualifications; and any questions with regard to his training and so forth are irrelevant."

Pages 119 through the middle of page 127 of the transcript relate to the cross-examination of Fischer by Entze's counsel except for a page and a half of testimony which involves redirect examination by counsel for the State. During that period, Entze's counsel questioned Fischer unlimitedly as to the operation of the Breathalyzer.

What we have then is a very narrow issue which relates to the restriction the trial court placed upon counsel for Entze in denying him the privilege of cross-examining the Breathalyzer operator as to qualifications, but allowing him ample opportunity to cross-examine the operator as to the actual test.

In light of the fact that it is contended in oral argument before this court that defense counsel would have been able to show, had he been able to cross-examine the Breathalyzer operator as to his qualifications, that the operator had only received one and a half hours of instruction on the Breathalyzer, we think the following questions and answers are pertinent:

"Q Now, other than the steps that you run through here, do you know how the breathalyzer operates or what the principle behind it is?

"A I know how to operate it by using the check list.

"Q You don't know anything else about it?

"A I am just an operator, sir. I'm a certified operator."

The trial court, in restricting cross-examination, relied on Section 39–20–07(5), N.D.

C.C.[1] The court concluded that with the admission in evidence of the photocopy of the Breathalyzer operator's certificate and the certified copy of the list of certified chemical test operators, which included Fischer's name as one of the qualified operators, the issue over his qualifications as an operator was settled.

We believe that the court erred in that conclusion, but that his error was without prejudice, for the reason that defense counsel was able, through subsequent cross-examination, to gain a concession from the operator that in essence he did not know much about the machine, but that he knew how to operate it. Independent of the Breathalyzer test, the record discloses sufficient evidence to sustain the verdict.

■ We believe that the receipt in evidence of a certified copy of the operator's certificate and the certified copy of the list of certified chemical test operators, creates a prima facie case of the operator's proficiency, but that it does not create an irrebuttable presumption of the operator's proficiency, and that, accordingly, defense counsel should have been permitted to engage in a reasonable amount of cross-examination into the qualifications of the operator. We believe that receipt of such certification extends to the trial court greater latitude in determining the extent of such cross-examination, but that it does not permit the trial court to completely prohibit cross-examination as to the operator's qualifications. The right to cross-examine adverse witnesses is recognized as a concomitant part of the right to be confronted with the adverse witnesses.[2]

■ We think it important, however, to consider another issue with which our court was concerned, but which counsel did not brief. That issue is whether or not it was necessary for defense counsel to make an offer of proof to preserve his right to raise this issue on appeal when the trial court prohibited him from cross-examining the Breathalyzer operator as to his qualifications.

An offer of proof is generally not necessary where the proof is sought to be elicited on cross-examination of an adverse witness or party. *Uhlman v. Farm, Stock & Home*

---

1. "5. The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's blood, urine, breath, or other bodily substance and the result thereof is further shown to have been performed according to the methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices, and methods of chemical analysis and to determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who shall exhibit the certificate upon demand by the person requested to take the chemical test. The state toxicologist may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the state toxicologist for appropriate action. Upon approval of the methods and/or devices and techniques required to perform such tests and the persons qualified to administer them, the state toxicologist shall prepare and file written record of such approval with the clerk of the district court in each county within the state which shall include:

   a. A quarterly register of the specific testing devices currently approved including serial number, location, and the date and results of last inspection.

   b. A quarterly register of currently qualified and certified operators of said devices stating the date of certification and its expiration.

   c. The operational check list and forms prescribing the methods and techniques currently approved by the state toxicologist in using such devices during the administration of the tests.

   Copies of the above records certified by the clerk of the district court shall be admitted as prima facie evidence of the matters stated therein." § 39–20–07(5), N.D.C.C.

2. "The right of confrontation guaranteed by the Sixth Amendment to the United States Constitution means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965), quoted in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)." *State v. Hilling*, 219 N.W.2d 164, 171 (N.D.1974).

*Co.*, 126 Minn. 239, 148 N.W. 102, 103 (1914); 75 Am.Jur.2d *Trial* § 129 (1974).

It should be noted that there is authority to the contrary. *Washington Nat. Ins. Co. v. Meeks*, 249 Ark. 73, 458 S.W.2d 135 (1970); *State v. Frazier*, 101 R.I. 156, 221 A.2d 468 (1966); *O'Brien v. Great N. R. Co.*, 145 Mont. 13, 400 P.2d 634 (1965).

We think it is significant what the Arkansas Supreme Court said in *Meeks*:

"It is clearly the majority rule that the requirement of an offer of proof does not apply where the testimony excluded was sought to be elicited by cross-examination of an adverse witness, and it has even been said that prejudice may be presumed. *Davey v. Davey*, 77 N.M. 303, 422 P.2d 38 (1967); *Stillwell v. State Industrial Accident Commission*, 243 Or. 158, 411 P.2d 1015 (1966); *Tate v. Connel*, 3 Ariz. App. 534, 416 P.2d 213 (1966); *Clark v. Continental Illinois National Bank & Trust Company*, 68 Ill.App.2d 16, 215 N.E.2d 816 (1966); *Kemp v. Lormer*, 87 Ohio App. 307, 94 N.E.2d 702 (1949); *McKoy v. Enterkin*, 181 Ga. 447, 182 S.E. 518 (1935); *Choy v. Otaguro*, 32 Haw. 543 (1932); *Howard v. Fraser*, 83 Mont. 194, 271 P. 444 (1928); *Shores v. Simanton*, 99 Vt. 191, 130 A. 697 (1925); *Uhlman v. Farm, Stock & Home Co.*, 126 Minn. 239, 148 N.W. 102, Ann.Cas. 1915D, 888 (1914); 5 Am.Jur.2d 250, Appeal & Error § 809. It has been pointed out that, because of the exploratory nature of the examination, it is unreasonable to require the cross-examiner to make an offer of proof. *Costa v. Regents of University of California*, 116 Cal.App.2d 445, 254 P.2d 85 (1953); *Cunningham v. Austin & N.W.R. Co.*, 88 Tex. 534, 31 S.W. 629 (1895). Not only do we agree with this reasoning, we also agree with a Missouri Court of Appeals which said that to apply the rule requiring proffer under all circumstances would unduly restrict the right of cross-examination and seriously impair its power and usefulness. *Rogers v. St. Avit*, 60 S.W.2d 698 (Mo.Ct.App.1933). Furthermore, we agree with the statement of the Supreme Court of Iowa in holding that a proffer was unnecessary to demonstrate error in denial of proper cross-examination of an adversary's witness, in *Schulte v. Ideal Food Products Co.*, 203 Iowa 676, 213 N.W. 431, 434 (1927). That court said:

* * * The right to cross-examine is quite absolute. It inheres in the right of the adversary to use the testimony of the witness at all. One of its purposes is to test the credibility of the witness." 249 Ark. at 78–79, 458 S.W.2d at 138–39.

Notwithstanding what the Arkansas Court said in support of the majority rule, it concluded that there are two exceptions when an offer of proof must be made when there has been an objection to a question propounded on cross-examination: (1) where the relevancy or materiality of the answer is not apparent, and (2) where the matter sought to be elicited relates only to an attack upon the credibility of the witness. *Washington Nat. Ins. Co. v. Meeks, supra,* 249 Ark. at 78, 458 S.W.2d at 139.

In *Frazier*, the Supreme Court of Rhode Island, in a criminal case, affirmed the action of the trial court in sustaining an objection to cross-examination of the state's witness, saying that the scope of cross-examination should be left to the sound discretion of the trial justice. It further justified its action by pointing out that the defendant made no offer of proof at the trial to establish what he intended to prove by cross-examination.

"It is true that in cross-examining a witness a party should be given reasonable latitude in order to accomplish the ultimate purpose of cross-examination in the search for truth. However, it is equally true that reasonable guidelines must be established to regulate such latitude in order to insure an orderly, as well as a fair, trial. To fulfill this need, the scope of cross-examination is left to the sound discretion of the trial justice. *State v. Tutalo*, 99 R.I. 14, 205 A.2d 137, 142. On this record we find no abuse of discretion. Moreover the question as phrased does not lend itself to the proof for which it was offered and, in any

event, the defendant made no offer of proof at the trial to establish what he intended to prove by such cross-examination, and having failed to do so, he cannot now complain that the ruling was prejudicial and an abuse of discretion. *State v. Smith*, 70 R.I. 500, 41 A.2d 153." 101 R.I. at 163–64, 221 A.2d at 473.

In *O'Brien*, the Supreme Court of Montana, in a civil case, while recognizing the general rule, found that under the circumstances of that case there was no prejudice to the party claiming error by having the cross-examination terminated.

The court said:

"We agree with counsel that 'as a general rule, in the interests of truth and justice, a wide latitude should be permitted in the cross-examination of an adverse witness; or as otherwise stated, a full cross-examination should be permitted * * *.' See 98 C.J.S. Witnesses § 377." 145 Mont. at 20–21, 400 P.2d at 639.

Notwithstanding its adherence to the general rule, the court said:

"We are constrained to view the objection in the same light as did the trial court; particularly, in view of the fact that subsequent to the court's ruling, the appellant made no effort to pursue further the line of questioning; neither did it make an offer of proof with respect to the testimony sought to be elicited, nor did it request the court that the witness be released and later recalled after sufficient evidence had been adduced which would have revealed the nature and pur-

pose of the line of questioning pursued." 145 Mont. at 21, 400 P.2d at 639.

It is our conclusion, after a review of all of the foregoing, that the majority rule is the better rule and thus we do not decide this case on the basis that defense counsel waived the defendant's right under the Sixth Amendment to the United States Constitution, the confrontation and cross-examination amendment, by failing to make an offer of proof. We affirm the trial court on the basis that, although the court was in error, the error was without prejudice,[3] because defense counsel was later permitted without objection from the State to question the witness concerning his knowledge of the Breathalyzer and was able to elicit an answer indicating that his knowledge of the Breathalyzer was limited to knowing how to operate it. We have considered that feature along with the fact that trial judges must be afforded some discretion in the scope of cross-examination.

It is our view that the cases cited by Entze, to-wit: *Knoepfle v. Suko*, 108 N.W.2d 456 (N.D.1961), and *Smith v. State of Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), and the cases cited by the Supreme Court in *Smith*, are distinguishable on the facts.[4] We agree with the law stated in those cases, but find them inapplicable to this case.

For the foregoing reasons, the judgment of the trial court is affirmed.

SAND, PAULSON and PEDERSON, JJ., concur.

---

3. "(a) Harmless Error.

Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Rule 52(a), N.D.R.Crim.P. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Hendrickson*, 240 N.W.2d 846, 848 (N.D.1976); *State v. Johnson*, 231 N.W.2d 180, 185 (N.D. 1975).

Having considered the probable affect of the restriction of the defendant's rights to cross-examine the Breathalyzer operator, in light of all the evidence, we find beyond a reasonable doubt that a substantial right of the defendant has not been affected and that although the restriction was error, that it was only harmless error.

4. In *Smith v. Illinois*, the defendant in a state criminal trial was denied the right to cross-examine a principal state witness as to his actual name and address. The court held that the denial of cross-examination in this situation violated the defendant's rights under the Sixth and Fourteenth Amendments.

*Knoepfle v. Suko* was a civil suit for injuries sustained in an automobile collision. This court held that the dead man's statute did not bar testimony of plaintiff regarding his observation of the relative speed and position of the automobiles before collision, but the lower court's requirement that defendant waive objection to such testimony as condition precedent to cross-examination of the plaintiff regarding such testimony, constituted prejudicial error requiring a new trial.

VandeWALLE, Justice, concurring and dissenting.

I concur with that portion of the majority opinion which holds that the trial court erred in concluding that with the admission in evidence of the photocopy of the Breathalyzer operator's certificate and the certified copy of the list of certified chemical test operators, which included Fischer's name as one of the qualified operators, the issue over his qualifications as an operator was settled. I agree that the receipt in evidence of such a certificate does not create an irrebuttable presumption of the operator's efficiency.

I dissent from that portion of the majority opinion which holds that the trial court error was without prejudice for the reason that the defense counsel was able, through subsequent cross-examination, to gain a concession from the operator that in essence he did not know much about the machine, but that he knew how to operate it. While the defense counsel was able to gain such a concession, the operator was not permitted to be questioned as to the training he received. Whether that evidence would have had any influence on the jury is conjectural and it is not for us to decide, i. e., I do not believe we should assume it would not have had any effect.

Of more significance, however, is the fact that the trial court, without prompting from the prosecutor, and on its own initiative, determined that the cross-examination of the witness (Breathalyzer operator Fischer) as to the place of training, etc., would be prohibited. Thus we have a situation in which the trial court did not exclude such cross-examination pursuant to an objection by the prosecutor but rather did so on its own initiative. The trial judge stated:

"The Court is going to find that this line of questioning is irrelevant. His certificate has shown that he's certified as an operator, and it's the same thing as showing that he's qualified to operating it, and those questions to qualifications and training and so forth are irrelevant because the Statute allows that certificate to be offered in evidence."

The majority, however, holds that because the defense counsel was able to secure an admission from the witness that in essence he did not know much about the machine, but that he knew how to operate it, the trial court's error was harmless error beyond a reasonable doubt. I cannot reach that conclusion in view of the trial court's previous statement that such questions were "irrelevant" and that the certificate showed the operator was "qualified." Since the evidence which was adduced by defense counsel, and which the majority opinion concludes made the trial court's error in prohibiting cross-examination harmless error, also included the qualifications of the operator which the trial court had previously ruled to be "irrelevant" in view of the admission of the certificate, it would appear the jury might well have discounted the admission defense counsel did secure from the witness: that he did not know much about the machine but knew how to operate it.

I also concur with that portion of the majority opinion which holds that defense counsel did not waive the defendant's right under the Sixth Amendment to the United States Constitution, the confrontation and cross-examination amendment, by failing to make an offer of proof.

For these reasons I would reverse the judgment of the trial court and remand for a new trial.