STATE of North Dakota, Plaintiff
and Appellee,

v.

Thomas A. BARTKOWSKI, Defendant
and Appellant.

Crim. No. 690.

Supreme Court of North Dakota.

Jan. 10, 1980.

James T. Odegard, State's Atty., Grand Forks, for plaintiff and appellee; oral argument waived.

Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for defendant and appellant; argued by Richard A. Ohlsen, Grand Forks.

PEDERSON, Justice.

This appeal is from a judgment upon conviction by a jury of the Class B felony, possession of a hallucinogenic drug with intent to deliver (§§ 19–03.1–05(4)(*l*), 19–03.1–23(1)(b), and 12.1–32–01(2), NDCC). Bartkowski presents three issues: (1) Did the trial court err in limiting his cross-examination of one of the State's witnesses? (2) Is the evidence sufficient to sustain the conviction? (3) Did the trial court commit prejudicial error in failing to require a special verdict on the question of entrapment? We find no prejudicial error. The evidence is sufficient to support the verdict. The judgment is affirmed.

Bartkowski testified in his own behalf and admitted that he sold a hallucinogenic drug to Gerald Kemmet, a law enforcement agent. His lawyer argued strenuously that Bartkowski was entrapped (§ 12.1–05–11, NDCC). The entrapment defense was based upon evidence introduced in an attempt to show that a paid informer, Barbara Kadlec, induced Bartkowski to sell the drugs to Kemmet by using persuasion and other means likely to cause normally law-abiding persons to commit the offense.

I. *Limitation of Cross-Examination*

During defense counsel's cross-examination of Kemmet, who is employed as

an undercover agent of the attorney general's Drug Enforcement Unit, the trial court sustained objections to several attempts to question Kemmet on matters relating to the transfer of the undercover functions of the State Crime Bureau to the office of the attorney general, and the substantial increase of funds appropriated for the enforcement of drug laws. In an offer of proof, counsel indicated, in effect, that he expected Kemmet to admit that political pressures required him to artificially create a substantial increase in drug convictions. If he could get that kind of admission from Kemmet, counsel argued that it would aid in convincing the jury that Bartkowski was entrapped. The trial court did not accept counsel's theory. The ruling sustaining the objection was reaffirmed.

"While courts generally favor permitting wide latitude on cross-examination, the scope of cross-examination must necessarily be left largely to the discretion of the trial court." *North American Pump Corp. v. Clay Equipment Corp.*, 199 N.W.2d 888, 899 (N.D.1972).

The same principle generally applies to cross-examination of witnesses in a criminal case. See discussions in 98 C.J.S. Witnesses § 401c, at 196, and 81 Am.Jur.2d Witnesses, § 472, at 478. Our most recent analysis of limitations on cross-examination of a witness in a criminal case, including offers of proof, is found in *State v. Entze*, 272 N.W.2d 292, 297 (N.D.1978). In that case, Chief Justice Erickstad, writing for the majority, said:

"We affirm the trial court on the basis that, although the court was in error, the error was without prejudice, [footnote omitted] because defense counsel was later permitted without objection from the State to question the witness . . . ."

In this case Bartkowski's counsel was not later afforded the opportunity to cross-examine on the subject matter of the transfer of drug law enforcement functions and the appropriation of funds for that purpose. We must determine in this case, as this court did in *Entze*, whether the trial court committed error in its limitation of cross-examination.

As Bartkowski properly points out, this court acknowledged in *State v. Folk*, 278 N.W.2d 410, 417 (N.D.1979), that limitations imposed upon the defense in a criminal case may be considered abuse of discretion. Discretion in the courts is never an unbounded discretion. Similarly, the Sixth Amendment right of confrontation, including the right of cross-examination, is not without limitation.

Citing *Knoepfle v. Suko*, 108 N.W.2d 456 (N.D.1961), this court, in *State v. Hilling*, 219 N.W.2d 164, 171 (N.D.1974), said:

"The right [to cross-examine] is absolute and the denial of the right *as to material evidence* is prejudicial error requiring a new trial." [Emphasis added.]

Ordinarily, the complete denial of cross-examination "would be constitutional error of the first magnitude." See *Brookhart v. Janis*, 384 U.S. 1 at 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966). There are exceptions. E. g., the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution does not prevent the use of dying declarations. See *Kirby v. United States*, 174 U.S. 47 at 61, 19 S.Ct. 574, 43 L.Ed. 890 (1899). Nor does it require the disclosure of the identity of an informer. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

The latitude and extent of cross-examination has always been held to be within the trial court's reasonable discretion. *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968). A reviewing appellate court should not disturb a trial court discretionary ruling unless there has been an abuse of discretion. Although we probably would not have limited the cross-examination in the manner that the trial court did, that is not the standard we apply in our review. Ordinarily it is preferable that trial courts permit overextended cross-examination rather than imposing limitations which may be unnecessary. It appears that the state's attorney's expressed fear that the case might become a political trial was the only reason for the limitation imposed here. Some courts have expressed the view

that doubts should be resolved on the side of liberality in allowing cross-examination. See *State v. Hires*, 583 S.W.2d 204 (Mo.App. 1979). Considering the rule that one who cross-examines on an irrelevant matter is bound by the answer he receives, it is doubtful that this case would have become a political trial if Kemmet would have been permitted to answer the questions that were objected to. There is no reason to believe, and the offer of proof made no claim, that Kemmet would have admitted that, in effect, he had "framed" Bartkowski in order to build up impressive statistics in the drug law enforcement program. We cannot say, under the circumstances here, that the trial court's limitation of cross-examination was an abuse of discretion. The Missouri Court of Appeals recently reached that same conclusion in *State v. Riley*, 583 S.W.2d 751 (Mo.App.1979), where it was contended that the limitation on cross-examination prevented the defendant from showing that he was "framed."

We have examined all of the other cases cited by Bartkowski, particularly *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); and *Hayes v. Coleman*, 338 Mich. 371, 61 N.W.2d 634 (1953), and find that they are not inconsistent with our conclusion.

General rules relating to cross-examination must have some flexibility in order that they may be properly applied to the great number of varied situations which arise. *Christianson v. United States*, 226 F.2d 646 (8th Cir. 1955), *cert. denied*, 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859 (1956). For a fuller analysis of limitations on cross-examination, see Vol. 2, Wharton's Criminal Evidence, 13th Ed., § 421 (1972).

## II. Sufficiency of Evidence

Bartkowski has not denied the sale, therefore we are only concerned whether or not the evidence as to entrapment warranted a jury finding that there was no entrapment. In *State v. Pfister*, 264 N.W.2d 694 (N.D.1978), we held that entrapment is a question for the jury unless there is no dispute as to the facts or the inferences to be drawn from them. See also *State v. Folk, supra.* The evidence as to the extent of the inducements used to persuade Bartkowski was conflicting. As to the number of times that Barbara Kadlec contacted Bartkowski about drugs, there is a very wide range in testimony, from approximately six or seven times in total, according to Kadlec, to as many as five or six in a couple of days, according to Bartkowski.

In *State v. Kaloustian*, 212 N.W.2d 843, 845 (N.D.1973), this court said that "at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction."

This court has also held:

"This being a jury case, to determine whether the evidence was sufficient to support the verdict we must view the evidence in the light most favorable to the verdict." *State v. Moe*, 151 N.W.2d 310, 313 (N.D.1967).

See also *State v. Goeller*, 264 N.W.2d 472, 477 (N.D.1978).

Bartkowski has not shown how the verdict of the jury that he was guilty is not supported by the evidence. Barkowski was not entrapped "as a matter of law." When the evidence is conflicting, as in this case, the issue is for the jury. The testimony of both Kadlec and Bartkowski, though differing greatly as to number of contacts, appeared in agreement in describing those contacts as "requests for drugs," and terms similar thereto. It is not surprising that the jury concluded that a normally law-abiding person would not have been persuaded to sell drugs unlawfully by the tactics used by Barbara Kadlec.

Bartkowski made great effort to show that he was a normally law-abiding person, thus inviting the jury to focus a great deal of attention upon him and away from the conduct of Kadlec. As we said in *State v. Folk, supra*, the entrapment law does not prevent a defendant from doing that. For

a thorough analysis of entrapment defense problems, see Kamisar, LaFave & Israel, Modern Criminal Procedure, *Police "Encouragement" and the Defense of Entrapment*, Ch. 7, at 467 (1976).

### Special Verdicts in Entrapment Cases

■ On oral argument in this court, Bartkowski argued that the trial court committed plain error (Obvious Error under Rule 52(b), NDRCrimP) in failing to require that the jury return a special verdict on the entrapment defense as provided in Rule 31(e)(4), NDRCrimP.

Ordinarily, the touchstones for an effective appeal on any proper issue are: (1) that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it, and (2) that there be a valid appeal from the judgment. *State v. Haakenson*, 213 N.W.2d 394, 399 (N.D.1973).

Here, Bartkowski did not raise the matter of a special verdict on his entrapment defense in the trial court, but he is correct in saying that Rule 52(b), nevertheless, permits this court to consider obvious errors or defects affecting substantial rights which were not raised in the trial court. That leads us to the question: Does the absence of a special verdict in a case where entrapment has been raised as a defense deprive a defendant of a fundamental right?

The American Law Institute, Proposed Final Draft (April 1, 1930), in a Commentary to § 349 (later renumbered as § 337 which is referred to in the Explanatory Note to Rule 31 of the NDRCrimP), states:

"At common law the jury could bring in a special verdict in any criminal case. 'And such public or open verdict may be either general, guilty or not guilty; or special, setting forth all the circumstances of the case, and praying the judgment of the court, whether, for instance, on the facts stated, it be murder, manslaughter, or no crime at all. This is where they doubt the determination of the law, and therefore choose to leave it to the determination of the court; though they have an unquestionable right of determining upon all the circumstances, and finding a general verdict, if they think proper so to hazard a breach of their oaths.' 4 Bl. Comm. 361."

In the explanatory note to Rule 52 is found the following:

"Subdivision (b) provides that obvious errors affecting substantial rights may be noticed even though they were not brought to the attention of the court. But the power to notice obvious error, whether at the request of counsel or on the court's own motion, is one the courts should *exercise cautiously and only in exceptional circumstances*. The power should be exercised only where a serious injustice has been done to the defendant. [See Wright, Federal Practice and Procedure, § 856, pages 372–374 (1969).]" [Emphasis added.]

Rule 31(e), NDRCrimP, is apparently unique to North Dakota. It provides:

"(e) Special Verdicts.

(1) Whenever the defendant interposes the defense of insanity and evidence thereof is given at the trial, the jury, if it finds him not guilty on that ground, shall declare that fact in their verdict.

(2) Whenever the defendant interposes the defense that he has been formerly convicted or acquitted of the same offense or an offense necessarily included therein, or once in jeopardy, and evidence thereof is given at the trial, the jury, if it so finds, shall declare that fact in their verdict.

(3) Whenever the defendant is charged with treason or conspiracy to commit treason and more than one overt act is charged, the jury, before returning a verdict of guilty, must return a special verdict with respect to each overt act charged.

(4) Whenever the defendant interposes any other defense which cannot be reflected in a general verdict, and evidence thereof is given at the trial, the jury, if it so finds, shall declare that fact in their verdict."

Although a significant part of the North Dakota Rules of Criminal Procedure paral-

lels the Federal Rules of Criminal Procedure, Rule 31(e) does not.

Federal Rule 31(e), as amended April 24, 1972, effective October 1, 1972, provides:

"(e) Criminal Forfeiture. If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any."

Special verdicts in federal courts, other than in cases involving criminal forfeiture, are rare but not unknown. Chief Judge Aldrich of the United States Court of Appeals, discussed special verdicts in *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969), and, at 181, quoted from G. Clementson, *Special Verdicts and Special Findings by Juries*, 49 (1905), as follows:

" 'It is one of the most essential features of the right of trial by jury that no jury should be compelled to find any but a general verdict in criminal cases, and the removal of this safeguard would violate its design and destroy its spirit.' "

It is thus an anomaly that Bartkowski should argue that the failure to require a special verdict affected his substantial rights and, therefore, constituted obvious error. Rule 31(e), NDRCrimP, has not heretofore been the subject of any appeal to this court. Section 9 of the North Dakota Constitution, which involves civil and criminal trials for libel, specifies in part: "and the jury shall have the same power of giving a general verdict *as in other cases*." [Emphasis added.] That may create a fundamental right to a general verdict but it cannot be said that it creates a fundamental right in a special verdict. In *State v. Tolley*, 23 N.D. 284, 136 N.W. 784, 788 (1912), this court said: "all that was intended by the use of the language quoted was to vest in the jury in such cases the right to render a general verdict."

The source note to Rule 31(e), NDRCrimP, refers us to The American Law Institute, Code of Criminal Procedure, Official Draft, § 337 (1930), which provides:

"Section 337. Verdict may be general or special. The jurors may in all cases render either a general or a special verdict."

It appears that § 29–22–17, NDCC, which was superseded by Rule 31, NDRCrimP, and which defined a special verdict as one by which the jurors find the facts only and present a "conclusion of fact," leaving nothing for the court but to draw conclusions of law upon them, would make a special verdict on an entrapment defense no more special than a general verdict of guilty or not guilty.

In order that a special verdict be considered or even permitted by the provisions of Rule 31(e)(4), it is necessary that the particular defense (entrapment here) "cannot be reflected in a general verdict." Here, where the only defense raised was entrapment, a general verdict of not guilty would clearly reflect that the jury found entrapment, and a general verdict of guilty would clearly reflect that the jury found no entrapment. We express no view as to the consequences should a jury choose to return a special verdict, as it apparently could under common law without being directed to do so by the trial court. See generally, 76 Am.Jur.2d Trial, § 1178, and 23 C.J.S. Criminal Law §§ 1293 and 1399.

The judgment is affirmed. The trial court is directed to require the destruction of the drugs that were made a part of the record in this case.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.