STATE of North Dakota, Plaintiff
and Appellee,

v.

Roger RINDY, Defendant and Appellant.

Cr. No. 725.

Supreme Court of North Dakota.

Nov. 21, 1980.

Charles J. Gilje, State's Atty., and John E. Greenwood, Asst. State's Attorney, Jamestown, for plaintiff and appellee; argued by John E. Greenwood, Asst. State's Atty., Jamestown.

Garcia & Garcia, Devils Lake, for defendant and appellant; argued by Kirk Garcia, Devils Lake.

PEDERSON, Justice.

Appellant Rindy was convicted by a six-person jury of driving under the influence of intoxicating liquor, § 39–08–01, NDCC. He has appealed the conviction, and cites as grounds for reversal (1) the trial court's restriction of his cross-examination of an adverse witness, and (2) a statement by the prosecutor in front of the jury about information not admitted into evidence. We affirm.

On March 19, 1980, law enforcement officers stopped Rindy for speeding on Highway 52 north of Jamestown. Suspecting that he had been drinking and was unfit to drive, the officers transported Rindy to the police department in Jamestown where a breath–analysis test showed his blood alcohol level to be .20 percent.

A highway patrol officer, Sgt. Allen Blomquist, who was present when the breath–analysis test was administered but did not participate, gave the following testimony in response to questioning by the prosecutor:

"Q. Based on your past experience, and what you saw of Mr. Rindy, do you have an opinion as to whether or not he was under the influence of alcohol at that time?

"A. Yes, I do.

"Q. What is that opinion?

"A. I believe he was under the influence of intoxicating liquor.

"Q. I'd like to show you what's been marked as State's Exhibit No. 8, which has been entered into evidence. The actual checklist used by Officer Odegard, which showed Breathalyzer results as .20 percent. Do you see that?

"A. Yes, I do.

"Q. Based on what you saw, does that result surprise you at all?

"A. No, not at all.

"Q. Does this result change your opinion as to whether or not Mr. Rindy was under the influence?

"A. No."

Rindy's first argument is that by so testifying Sgt. Blomquist became an expert witness with regard to the functioning of the Breathalyzer machine. Rindy points also to Sgt. Blomquist's statement during cross–examination that he (Blomquist) was familiar with the operation of the unit. On this basis, counsel for Rindy attempted, through cross–examination of the sergeant, to show the possibility of a defect or malfunction in the type of unit used in Rindy's case, and to discredit Blomquist's expression that the breath–analysis result was in accord with Rindy's appearance. Without objecting to any specific question, the prosecutor objected several times to the scope of the questioning when it began to test Blomquist's knowledge about the technical working of a Breathalyzer. Rindy "excepted," and now contends that the court committed reversible error when it allowed him to continue but said, "Let's not conjecture on what might be. Let's deal with this specific machine."

Cross–examination is the primary mode of vindicating the Sixth Amendment guarantee of confrontation, and yet the scope of cross–examination is necessarily a matter involving the trial court's discretion. *State v. Entze*, 272 N.W.2d 292, 295, 297 (N.D. 1978); Rule 611, North Dakota Rules of Evidence. We have said that when a court forbids cross-examination as to material evidence a new trial will be ordered. *State v. Hilling*, 219 N.W.2d 164, 171 (N.D. 1974).

We reject the assertion that Sgt. Blomquist, by his testimony, became an expert witness with regard to a Breathalyzer's operation. He did admit to a degree of experience and familiarity, but he expressly disclaimed knowledge of the scientific principles upon which the machine is based. However, even were we to view him as an expert, the comparison made by Blomquist, between Rindy's behavior and blood alcohol level as verified by the machine, required no expertise but simply an acquaintance with the rough percentage level of alcohol in the blood at which influence and intoxication ordinarily occur. Cross–examination aimed at discrediting Blomquist as an expert witness on Breathalyzers generally was irrelevant to his observation and was rightly curtailed by the court.

Nor was Blomquist an expert for the purpose of showing the possibility of a malfunction in the specific Breathalyzer used here. Blomquist professed no knowledge that would allow him to comment authoritatively on the subject. Blomquist was not the officer who ran the test on Rindy.[1] If counsel wished to challenge the validity of the scientific basis for relying upon Breathalyzer tests, a much more appropriate and effective way of proceeding would have been to summon, at no expense to the defendant, the state toxicologist, a qualified expert who certifies quarterly each breath–testing device in the State. See Section 39–20–07, NDCC. Because of its specific statutory approval and widespread use in the courts over a period of more than 20

---

1. Contrast with *Entze, supra.*

years, a challenge of the use of Breathalyzer tests to determine blood alcohol levels would appear a most formidable task and would at least require the production of evidence from experts. See, e. g., Annot. 97 A.L.R.3d 294, and the numerous annotations cited therein. Also, 31A C.J.S. Evidence, § 76, and 29 Am.Jur.2d, Evidence, §§ 103–110. In any event, the trial court *did* allow Rindy's counsel to continue cross–examination of Blomquist regarding the actual unit at the Jamestown Police Department on March 19. The court's restriction pertained only to questions seeking to demonstrate Blomquist's lack of scientific knowledge. There was no denial of access to material evidence.

█ Rindy's second claim of error stems from a comment made by the prosecutor when counsel for Rindy was taking exception to the court's limitation of cross–examination:

"MR. KIRK GARCIA: Your Honor, for the record, the defendant makes an exception to the court's ruling. We feel that we have a right to inquire further into the workings of the machine.

"THE COURT: Very well. Noted.

"MR. GREENWOOD: I guess I can go into the district court's office and get the latest quarterly report, which would show that the machine was working since that time.

"MR. KIRK GARCIA: I really take exception to the statement that the prosecution has made at this point. He's introduced evidence which has not been introduced up to this point. Totally without–

"THE COURT: Very well. Exception is noted. Proceed with your question."

Rindy contends the court erred by failing to strike the statement and not admonishing the jury to disregard it.

We must first determine whether error was in fact committed. Assuming the prosecutor's remark was improper, we find in the record no valid objection or motion by counsel for Rindy for a mistrial or to strike, nor was the court asked to warn or instruct the jury. The trial court acknowledged counsel's "exception," all that was required of him under the circumstances. For distinction between "objections" and "exceptions," see 23 C.J.S. Criminal Law § 998, and 4 C.J.S. Appeal and Error § 321, in particular page 1027. Thus Rindy, as the State correctly argues in its brief, is not citing any error by the trial court. In the absence of obvious error, a sine qua non for review by this court is "that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it." *State v. Bartkowski*, 290 N.W.2d 218, 221 (N.D.1980); see also, *State v. Wells*, 265 N.W.2d 239, 242 (N.D.1978). Rindy simply took exception to the comment and the trial court noted it. No further request was made. With the statement already on the record, counsel for Rindy had the responsibility to ask that it be stricken and disregarded. See *State v. Johnson*, 231 N.W.2d 180, 186 (N.D.1975).[2]

Whether or not it is reviewable ordinarily, under Rule 52(b), NDRCrimP, we will take note of an error raised for the first time on appeal if it infringes upon the substantial rights of the defendant. However, we are constrained somewhat by the note following the text of the rule:

"Subdivision (b) provides that obvious errors affecting substantial rights may be noticed even though they were not brought to the attention of the court. But the power to notice obvious error, whether at the request of counsel or on the court's own motion, is one the courts should exercise cautiously and only in exceptional circumstances. The power should be exercised only where a serious injustice has been done to defendant. (See Wright, Federal Practice and Procedure, Section 856, pages 372 to 374 (1969))"

In assessing the possibility of error concerning substantial rights, we examine "the en-

---

2. One passage from *Johnson* is particularly appropriate here: "When his objection was sustained, defendant made no motion for mistrial nor did he move that the jury be instructed to disregard the testimony. He seeks here . . . to appeal from a ruling in his favor. The court has denied him nothing."

tire record and the probable effect of the actions alleged to be error in light of all the evidence." *State v. Hendrickson*, 240 N.W.2d 846, 848 (N.D.1976), quoting *Johnson, supra*, at 185.

We certainly do not condone the conduct of the prosecutor, but we can discern no violation of Rindy's rights. Counsel had the opportunity to remedy the effect of the comment. Moreover, the prosecution presented evidence, independent of the remark, from which one could infer that the Breathalyzer was functioning properly. The device was shown to have been certified by the state toxicologist, and the officer who administered the test on Rindy testified specifically that the unit was checked for accuracy at that time. Thus were it conceded that the court erred, we believe the wrongful mention of additional evidence was harmless. See, *Entze, supra*, at 295; *State v. Fuchs*, 219 N.W.2d 842, 847 (N.D.1974). We therefore refuse to set aside the verdict.

The judgment is affirmed.

ERICKSTAD, C. J., VANDE WALLE and SAND, JJ., and WILLIAM A. NEUMANN, District Judge, concur.

WILLIAM A. NEUMANN, District Judge, sitting in place of PAULSON, J., disqualified.